In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1588

Northeast Illinois Regional Commuter
Railroad Corporation, d/b/a Metra,

Plaintiff-Appellant,

v.

Hoey Farina & Downes,

Defendant-Appellee.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 1320--Harry D. Leinenweber, Judge.


Argued February 14, 2000--Decided May 15, 2000



        Before Bauer, Flaum, and Evans, Circuit Judges.

        Flaum, Circuit Judge.  On March 4, 1998,
Northeast Illinois Regional Commuter Railroad
Corporation (d/b/a "Metra") filed a complaint for
declaratory and injunctive relief against Douglas
Baethke and the law firm Hoey Farina & Downes
("Hoey") in the United States District Court for
the Northern District of Illinois. Metra alleged
that the defendants were interfering with Metra's
rights, guaranteed under the federal Railway
Labor Act ("RLA"), 45 U.S.C. sec. 151 et seq., to
conduct disciplinary hearings according to the
terms of a collective bargaining agreement. The
district court dismissed for lack of subject
matter jurisdiction. For the reasons stated
herein, we affirm.

Background

        Metra is a corporation that operates commuter
passenger trains in the Chicago region, and it is
a "carrier" within the meaning of the RLA, which
governs labor relations matters within the rail
industry. Douglas Baethke was employed by Metra
as a locomotive engineer. His employment was
governed by a collective bargaining agreement
("CBA") between Metra and the Brotherhood of
Locomotive Engineers ("BLE"), his bargaining
representative, as well as by the provisions of

the RLA. Under the CBA, Metra may only discipline a covered employee after first conducting a fair and impartial disciplinary investigation hearing, at which the employee may be represented by a BLE official, but not by a private attorney.

On May 2, 1996, Baethke allegedly suffered an injury to his leg during the course of his employment, and he was off work until July 21, 1997, and then from October 9, 1997 through the date at which Metra's initial complaint was filed. Baethke retained the Hoey law firm to represent him in his personal injury suit against Metra. Baethke repeatedly told Metra representatives that his injury rendered him unable to return to work, but on December 4, 1997, he was observed engaging in strenuous physical activities. On January 28, 1998, Metra officials sent Baethke a letter informing him that he was medically released to return to work as of January 26, but that he was removed from service pending an investigation hearing, to be conducted under the procedures established in the Metra-BLE CBA, concerning his possible violation of Metra work rules.

Baethke informed Hoey of the disciplinary investigation hearing, then scheduled for February 13, 1998, and on February 5 a Hoey attorney sent Metra a letter threatening to file suit, in the law firm's own name, against Metra if Metra did not agree to grant Baethke certain rights beyond those provided by the CBA. Specifically, the attorney demanded that he be permitted to attend the hearing, that he be able to cross-examine company witnesses, that he receive copies of all relevant medical documents, and that the hearing be postponed to allow him time to assemble his own evidence. The Hoey attorney conceded that the CBA did not permit Baethke any of these rights but he insisted that if Metra adhered to the CBA's terms Metra would be tortiously interfering with the attorney's relationship with Baethke./1 The Hoey attorney threatened to sue for injunctive relief, and Metra responded with a letter stating that Metra would not grant Baethke the additional rights demanded by the Hoey attorney. The Hoey attorney then sent Metra another letter threatening to sue if Metra continued to refuse.

On March 4, 1998, Metra filed a complaint in federal district court for declaratory and injunctive relief against Baethke and Hoey. The RLA prescribes mandatory procedures that must be followed with respect to certain types of employment disputes. Metra asserted that Baethke and Hoey understood that any direct assertion by Baethke or Hoey that Metra's decision to hold the disciplinary hearing would violate Baethke's

rights would be subject to the exclusive dispute resolution procedures prescribed by the RLA, under which Metra would be entitled to proceed with the hearing pending resolution of the dispute over the application of the CBA. Therefore, Metra alleged, Baethke and Hoey concocted a scheme to prevent Metra's holding of the disciplinary hearing by demanding terms different from those prescribed by the CBA and the RLA based on the law firm's supposed rights under Illinois law. Hoey's warnings that Metra's exercise of the railroad's RLA-based rights would tortiously interfere with the law firm's rights, Metra claimed, was part of Hoey and Baethke's scheme to obtain for Baethke different terms than those prescribed by the CBA

Metra requested declaratory and injunctive relief against both Baethke and Hoey to prevent them from interfering with Metra's right to conduct the Baethke disciplinary hearing and any future disciplinary hearings pursuant to the provisions of its CBA and the RLA. Metra sought declarations that it enjoyed the legally protected right to conduct the Baethke disciplinary hearing and future disciplinary hearings involving Hoey clients according to terms of the CBA and that this right, as a matter of federal law, supersedes any legally cognizable rights that the firm may have. Metra also sought declarations that Hoey could not enjoin such hearings because Metra's conduct either did not violate any legally cognizable rights belonging to Hoey or was privileged as a matter of Illinois common law. Finally, Metra sought injunctive relief preventing Hoey from interfering with Metra's federally protected rights, such as by commencing a lawsuit to prevent Metra from conducting its hearings.

On March 5, 1998, one day after Metra filed its complaint, Hoey carried out its threat and filed a lawsuit against Metra in the Circuit Court of Cook County, Illinois, alleging that Metra's conduct of the Baethke disciplinary proceeding under the procedures prescribed in the CBA would tortiously interfere with the law firm's relationship with its client. Metra responded by filing a motion to dismiss Hoey's state lawsuit on the ground that it was barred by the pendency of Metra's earlier-filed federal action.

In response to Metra's federal lawsuit and its motion to dismiss Hoey's later-filed state court suit, Hoey sent a letter to Metra stating that it was withdrawing its demand to be present at the pending investigation of Baethke or to assert any other rights the law firm might have under state law to enjoin the investigation. The letter concluded: "I trust this renders all issues in

the above-referenced matters moot and both cases can be dismissed." Hoey then voluntarily dismissed its lawsuit in state court, and on March 24, 1998, it moved to dismiss on mootness grounds the present, federal action on behalf itself and Baethke.

On June 2, the district court granted the motion to dismiss Metra's claims against Baethke and Metra's claims against Hoey that related specifically to the Baethke hearing. The court denied Hoey's motion to dismiss Metra's claim seeking relief to prevent Hoey from commencing future lawsuits to interfere with Metra's federally protected rights, the court having concluded that these claims were not moot because there exists a present threat that Hoey, which represents other Metra employees, might disrupt future proceedings.

In November 1998, Metra filed a motion for summary judgment with respect to its claims for declaratory relief only, asserting that it was entitled as a matter of law to such relief. Hoey argued that the district court lacked subject matter jurisdiction because Metra's claims for declaratory and injunctive relief did not "arise under" federal law, since Metra's RLA-based preemption claims were ones that the railroad could raise as a defense in the type of state court tortious interference suit threatened against it by the law firm.

On February 12, 1999, the district court dismissed Metra's claims against Hoey for lack of subject matter jurisdiction, and Metra now appeals that dismissal.

Discussion

District courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. sec. 1331. Under the well-pleaded complaint rule, it must be clear from the face of the plaintiff's complaint that there is a federal question. Louisville & Nashville Railroad Co. v. Mottley, 211 U.S. 149 (1908); Burda v. M. Ecker Co., 954 F.2d 434, 438 (7th Cir. 1992). But, "[i]n declaratory judgment cases, the well-pleaded complaint rule dictates that jurisdiction is determined by whether federal jurisdiction would exist over the presumed suit by the declaratory judgment defendant." GNB Battery Technologies, Inc. v. Gould, Inc., 65 F.3d 615, 619 (7th Cir. 1995). In other words, as the Supreme Court explained in Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950), if the plaintiff cannot get into federal court by anticipating what amounts to a

federal defense to a state-law cause of action, he also should not be able to use the Declaratory Judgment Act to do so by asserting what is really a preemptive federal defense as the basis of his complaint. See also Ceres Terminals, Inc. v. Industrial Commission of Illinois, 53 F.3d 183, 185 (7th Cir. 1995).

In Public Services Commission of Utah v. Wycoff Co., 344 U.S. 237 (1952), the Supreme Court reiterated the position taken in Skelly Oil: "Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal question jurisdiction in the District Court." Id. at 248 (emphasis added). Then, in Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1 (1983), the Court made clear the strictness of the rule that "if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." Id. at 16 (citing Skelly Oil and quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure sec. 2767).

Based on the line of precedent running through Skelly Oil, Wycoff, and Franchise Tax Board, the district court in this case lacked jurisdiction to hear Metra's claim. Metra argues that the district court had jurisdiction over its claim for a declaration that the RLA preempts any state law claim that Hoey might have for alleged tortious interference because Metra's claim arises under the RLA and the Supremacy Clause of the Constitution. Metra characterizes its claims as an attempt to protect its rights under federal law to discipline employees for workplace misconduct in accordance with the procedures prescribed in certain collective bargaining agreements. But these Supreme Court cases establish that a conflict between federal law and state law is not enough to confer subject matter jurisdiction. In essence Metra went to district court seeking adjudication of its argument that the RLA provides a federal law defense to the type of state law tortious interference suit Hoey threatened to bring. The precedent just outlined, however, precludes Metra from recharacterizing the claim to fit the well-pleaded complaint rule by means of the Declaratory Judgment Act. See Ceres Terminals, 53 F.3d at 184-85 (holding that a district court lacked jurisdiction over declaratory judgment actions filed by stevedore contractors, where the contractors sought a declaration that the state's power ends at the water's edge, therefore barring threatened state

workers' compensation claims by two workers); Nuclear Engineering Co. v. Scott, 660 F.2d 241, 253 (1981) ("It is well-settled that the Declaratory Judgment Act confers no additional jurisdiction upon the federal courts. When a declaratory judgment plaintiff asserts a claim that is in the nature of a defense to a threatened or pending coercive action, the character of the threatened or pending coercive action determines whether federal question jurisdiction exists over the declaratory judgment action.") (citations omitted).

Metra does not dispute the applicability of the directives spelled out in Wycoff and Franchise Tax Board to its claim. Instead of arguing that its claim lies outside the jurisdictional lines that the language of Wycoff draws, Metra argues that the Wycoff approach has been renounced or limited by subsequent Supreme Court and Seventh Circuit decisions. Specifically, Metra argues that federal question jurisdiction must exist over claims that a threatened action based upon state law would violate the declaratory plaintiff's federal rights because to hold otherwise would conflict with Ex parte Young, 209 U.S. 123 (1908), and its progeny, which establish that federal courts have subject matter jurisdiction over suits to enjoin state interference with a plaintiff's federal rights. In Illinois v. General Electric Co., 683 F.2d 206 (7th Cir. 1982), this Court considered whether federal question jurisdiction over a claim for declaratory relief must be assessed by reference to the "character" of the cause of action threatened by the declaratory defendant rather than the nature of the claims actually pleaded by the declaratory plaintiff. In that case, the recently enacted Illinois Spent Fuel Act prohibited actions that General Electric believed it was entitled to take under federal law. General Electric filed suit in federal district court seeking a declaration that the Act violated the Commerce and Supremacy Clauses of the U.S. Constitution. This Court ultimately ruled that the district court had subject matter jurisdiction over General Electric's declaratory claim. In doing so, we noted that the "character" of the claim rule spelled out in Wycoff, "if understood to require federal claimants always to litigate their claims as defenses in state court if they can, . . . must be wrong. . . . Since the impending state action will almost always be based on state law alone, the dictum [of Wycoff], read broadly, would overrule Ex Parte Young and every case that has ever followed it." Id. at 211.

But General Electric involved a challenge to threatened state regulation, not private actions under state law, and to extend the observations

of that case to cover declaratory actions like Metra's ignores the unique doctrinal concerns underlying Ex parte Young. Ex parte Young carves out an exception to the otherwise strict application of Eleventh Amendment immunity, to ensure state compliance with federal law. "Ex parte Young was the culmination of efforts by [the Supreme Court] to harmonize the principles of the Eleventh Amendment with the effective supremacy of rights and powers secured elsewhere in the Constitution." Perez v. Ledesma, 401 U.S. 82, 106 (1971) (Brennan, J., concurring in part and dissenting in part). With respect to suits challenging threatened state-law actions by private parties, however, even though the procedural posture may resemble that of an Ex parte Young suit challenging threatened state regulation, federal courts have continued to apply the well-pleaded complaint rule and other traditional jurisdictional principles outlined above. See, e.g., Ceres, 53 F.3d at 185; see also Colonial Penn Group, Inc. v. Colonial Deposit Co., 834 F.2d 229, 237 (1st Cir. 1987); Armstrong v. Armstrong, 696 F.2d 1237 (9th Cir. 1983). Accordingly, the district court correctly dismissed Metra's suit for lack of subject matter jurisdiction.

Conclusion

For the reasons stated herein, we AFFIRM the decision of the district court.

/1 This lawsuit was based on an Illinois appellate court decision, Callis, Papa, Jensen, Jackstadt & Halloran, P.C. v. Norfolk Southern Corp., 292 Ill.App.3d 1003 (1997), which suggested that a law firm in Hoey's position might have a tortious interference claim against the railroad.