NORFOLK SOUTHERN RAILWAY
COMPANY, Plaintiff–
Appellant,

v.

James E. GUTHRIE, Buddy W. Snyder,
and Lakin Law Firm, Defendants–
Appellees.

No. 00–1763.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 24, 2000.

Decided Nov. 15, 2000.

James S. Whitehead (argued), Sidley & Austin, Chicago, IL, for Plaintiff–Appellant.

Roy C. Dripps, Lakin Law Firm, Wood River, IL, Gail Gaus Renshaw (argued), St. Louis, MO, for Defendants–Appellees.

Before FLAUM, Chief Judge, and MANION and EVANS, Circuit Judges.

FLAUM, Chief Judge.

Norfolk Southern Railway Company ("NS") appeals the dismissal of its declaratory judgment action against Buddy W. Snyder and Lakin Law Firm ("Lakin").[1] The district court dismissed NS's claims for lack of subject-matter jurisdiction under Article III. We affirm the lower court's decision, but on different grounds.

## I. Background

Part of NS's extensive railroad operations are located in Illinois. NS's relations with its employees in this area are governed by a collective bargaining agreement ("CBA") and the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* Under the CBA, NS must hold a fair and impartial investigation to discipline workers who have been employed for sixty or more days. Such a worker is entitled to be represented by an officer of the union. during these hearings. NS requires any employee who is injured while on duty or on company property to report to his or her supervisor before the end of that day. Any employee who obtains medical attention for such injuries must also notify his or her supervisor.

Current defendant Snyder and former defendant Guthrie are employees of NS who suffered apparently work-related injuries and received medical treatment for these during June, 1999 without informing their supervisors. When NS's management learned of their failure to follow the company's rules, it notified both Snyder and Guthrie that they were to attend disciplinary investigations that were originally scheduled in July but were postponed until September. After receiving these notifications, both Guthrie and Snyder hired Lakin.

On August 27, NS received two letters from Lakin regarding Guthrie and Snyder. Lakin informed NS that it represented both employees. Both letters state that any disciplinary investigation by NS would interfere with Lakin's attorney-client relationships with Guthrie and Snyder. Lakin requested that NS cancel the investigation until after Lakin had filed and litigated

1. James E. Guthrie was also a defendant in the original complaint, but NS named only Snyder and Lakin in its amended complaint which is the subject of this appeal.

Guthrie and Snyder's claims under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, and asked to be notified of NS's decision by August 31.

In response to these letters, NS filed a complaint for declaratory and injunctive relief on August 31, 1999. The complaint asked the district court to find that the disciplinary investigations were permitted by the RLA and CBA and that any attempt by Lakin to prevent such investigations through state law means would be preempted by federal law. NS was aware that Illinois recognized a tort for interference with an attorney-client relationship and that law firms could sue in their own names to recover under this cause of action. NS also knew that on eight different occasions within the preceding year-and-a-half Lakin had filed suits in state court employing this claim to prevent Union Pacific, another railroad operating in southern Illinois, from conducting disciplinary investigations of its employees.

Lakin moved to dismiss NS's action on a variety of theories. The district court chose one not argued by the parties: lack of a case or controversy under Article III. The court stated that it did not have subject-matter jurisdiction over the case because Lakin had not taken any actions against NS and NS was not in immediate danger of sustaining direct injury caused by Lakin. NS filed a Fed.R.Civ.P. 59(e) motion asking for an opportunity to brief the case or controversy issue and for the court to reconsider its decision, but this was denied.

NS appealed to this court. During the appellate briefing schedule, *Northeast Ill. Regional Commuter R.R. Corp. v. Hoey Farina & Downes*, 212 F.3d 1010 (7th Cir.2000) ("*Metra*"), whose legally relevant facts are identical with the instant case, was decided. *Metra* holds that, because of the well-pleaded complaint rule, the federal courts lack statutory subject-matter jurisdiction over declaratory actions that seek to challenge threatened state law actions by non-governmental declaratory defendants. *Id.* at 1014–16.

## II. Discussion

■■■ The parties present two arguments: one concerning constitutional subject-matter jurisdiction and the other regarding statutory subject-matter jurisdiction. We may exercise our discretion in choosing which of these threshold issues to address initially. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 97 n. 2, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (stating that "a statutory standing question *can* be given priority over an Article III question," (emphasis added) suggesting that a court has the discretion to consider either a constitutional or statutory subject-matter jurisdiction question first). Even though Article III jurisdiction need not always be examined before any other issue, it is an antecedent question of every case. *Id.* at 101, 118 S.Ct. 1003. Thus, we choose to analyze the case or controversy issue before the well-pleaded complaint question.

### A. Case or Controversy

■■■ The district court's legal determination that it lacked Article III jurisdiction is reviewed *de novo. See Love Church v. City of Evanston*, 896 F.2d 1082, 1085 (7th Cir.1990). NS argues that its complaint against Lakin and Snyder presents a case or controversy and thus should not have been dismissed for lack of constitutional subject-matter jurisdiction. NS is correct.

■■■ Where a declaratory plaintiff files a complaint in anticipation of litigation by the declaratory defendant, a case or controversy exists if the threat of such litigation is real and immediate. *See GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615, 620 (7th Cir.1995). Only the actions of the declaratory defendant known to the declaratory plaintiff at the time the action is commenced can be considered in

determining whether such a threat exists. *See Trippe Mfg. Co. v. American Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir.1995). NS knew that Lakin had filed tortious interference claims against Union Pacific on eight occasions when that railroad had tried to conduct disciplinary investigations against Lakin's clients. These incidents show that Lakin is likely to litigate whenever it believes a railroad is interfering with its attorney-client relationships. NS received two letters from Lakin stating that NS's proposed investigations against Snyder and Guthrie would so interfere. Lakin's propensity to sue whenever it believes that a railroad is interfering with its attorney-client relationships combined with its letters to NS stating that Lakin believed that NS's proposed disciplinary investigations would constitute such interference is sufficient to demonstrate a real and immediate threat of litigation. Thus, the district court had the constitutional subject-matter jurisdiction necessary to proceed with NS's declaratory action.

*International Harvester Co. v. Deere & Co.*, 623 F.2d 1207 (7th Cir.1980), relied upon by Lakin, is not to the contrary. In that case, Deere would frequently use litigation against parties that it believed infringed on its patents, much the same way Lakin sues railroads that it believes are about to interfere with its attorney-client relationships. However, declaratory plaintiff International Harvester failed to show that Deere believed that International Harvester's product design infringed on Deere's patent, which is the fact that would trigger a suit by Deere. *Id.* at 1212. In contrast to *International Harvester*, the letters from Lakin to NS show that Lakin believed the disciplinary investigations would interfere with its attorney-client relationships, which is the fact that would trigger litigation by Lakin, and thus a real and immediate threat of suit existed.

**B.  *Metra* Decision**

Unfortunately for NS, it faces another barrier in its attempt to bring Lakin and Snyder into federal court. This circuit's decision in *Metra* holds that in a declaratory judgment action anticipating litigation by a non-governmental declaratory defendant, statutory subject-matter jurisdiction exists only where federal jurisdiction would be present in a suit filed by the private declaratory defendant against the declaratory plaintiff. 212 F.3d at 1014–16. In this case, the declaratory defendant is Lakin, which is not a government entity, and its only claim in a putative suit filed against NS would be a state law tortious interference action. Under *Metra*, the well-pleaded complaint rule of *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908) applies because Lakin's complaint would not allege a federal cause of action and thus federal question jurisdiction under 28 U.S.C. § 1331 (the only type of statutory jurisdiction NS alleges) does not exist.

NS correctly admits that the facts of the instant case are identical to those of *Metra* for all legally relevant purposes and concedes that *Metra* bars its suit if that decision stands. Thus, NS argues that *Metra* and the Seventh Circuit cases on which it relies are incorrect and should be overruled. NS claims that *Metra* lacks support in Supreme Court holdings and is in tension with a prior Seventh Circuit decision. NS's contentions, or variations on these, were considered in and rejected by the *Metra* opinion. Petitions for rehearing by the panel and rehearing *en banc* were filed in *Metra*, but were denied. NS does not claim that the *Metra* holding conflicts with a Supreme Court decision. NS has not demonstrated that *Metra* goes against the bulk of Seventh Circuit law, nor does NS cite opinions from other circuits showing that *Metra* deviates from the decisions of other courts that have considered the issue. In these circumstances, we decline to overrule *Metra* and instead reaffirm it. *See In re Bentz Metal Prods. Co.*, 231 F.3d 1029, 1033 (7th Cir.2000). Applying *Metra* to NS's complaint, we hold that the lower

court lacks statutory subject-matter jurisdiction over this case.

### III. Conclusion

NS's declaratory complaint presents a justiciable case or controversy under Article III. However, Lakin's claims against NS would be based only on state law, and thus no federal jurisdiction exists under § 1331. Because of this lack of federal question jurisdiction, the judgment of the district court is AFFIRMED.