In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2857

COUNTY MATERIALS CORPORATION,

*Plaintiff-Appellant,*

*v.*

ALLAN BLOCK CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05-C-675-S—**John C. Shabaz**, *Judge.*

ARGUED MARCH 27, 2007—DECIDED SEPTEMBER 18, 2007

Before MANION, KANNE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* This case is one of those non-patent patent cases that, as we explain more fully below, falls within the jurisdiction of the regional courts of appeals rather than the Federal Circuit. See 28 U.S.C. §§ 1295(a)(1), 1338; *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 829-30 (2002) (applying well-pleaded-complaint rule to § 1338). Two companies, County Materials Corporation and Allan Block Corporation, entered into a production agreement ("the Agreement") giving exclusive rights to County Materials to manufacture Allan Block's patented concrete block; the issue is whether County Line was free to sell an allegedly non-infringing product, despite the presence of a covenant

not to compete in the Agreement in which County Line promised not to sell competing products for 18 months if it stopped making Allan Block's product. Following the termination of the Agreement, County Line decided not to wait for the full 18 months before jumping back into the market with a competing product. Allan Block threatened to sue, but County Line beat it to the courthouse with this suit for a declaratory judgment. County Line wanted the district court to declare that the covenant not to compete was unenforceable because it violated federal patent policy, essentially raising an anticipatory patent misuse defense to its planned breach of the Agreement. The district court granted summary judgment to Allan Block, finding no violation of federal patent policy or Minnesota law. We agree with the district court's conclusions and affirm.

**I**

County Materials is in the business of manufacturing concrete blocks. Allan Block develops, markets, and licenses technology for the manufacturing of concrete blocks; it does not manufacture blocks itself. In April 1993, County Materials's predecessor in interest, County Concrete Corporation, entered into a production agreement with Allan Block. The Agreement granted to County Materials the exclusive right to manufacture Allan Block's patented block products in northwest Wisconsin. County also was granted the right to sell these products under the Allan Block trademark. Finally, Allan Block agreed to provide County Materials with significant technical, marketing, and strategic support while the Agreement was in effect.

The Agreement included a limited covenant not to compete, which allowed County Materials to make and sell two specific competing block products, without any

time restrictions. The non-compete provision also required that for the 18 months following the termination of the Agreement, County Materials could not "directly or indirectly engage in the manufacture and/or sale of any other [competing] . . . block."

In 2005, Allan Block notified County Materials that it would be terminating the Agreement. Shortly thereafter, County Materials completed its own design for a new concrete block that would compete directly with the Allan Block products that it had been manufacturing and selling in northwest Wisconsin. As County Materials took steps to begin producing this new block, Allan Block threatened that it would sue to enforce the non-compete provision from the terminated Agreement. County Materials decided to move first, and so it filed this suit alleging that the inclusion of the non-compete provision in the Agreement constituted patent misuse, which made the Agreement void.

## II

The district court's jurisdiction over this case was based on diversity. 28 U.S.C. § 1332(a)(1). County Materials is a Wisconsin corporation with its principal place of business in Wisconsin; Allan Block is a Minnesota corporation with its principal place of business in Minnesota, and County Materials alleges damages exceeding $75,000.

Even though the requirements of § 1332 are therefore satisfied, there is a second potential jurisdictional hurdle in our path. Allan Block, repeating an argument made to this court in advance of oral argument, contends that appellate jurisdiction over this appeal lies with the Federal Circuit and not this court. The Supreme Court has held that the Federal Circuit has appellate jurisdiction

only [in] those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988); see also *Holmes Group*, *supra*.

Looking as we must at the well-pleaded complaint, it is apparent that federal patent law does not create the cause of action here. It is instead a claim about the enforceability of a contract or license agreement. Resolution of this appeal does not "necessarily require[ ] resolution of substantial questions of federal patent law," as Allan Block claims. We faced almost the same arguments in *Scheiber v. Dolby Laboratories, Inc.*, 293 F.3d 1014 (7th Cir. 2002), where we concluded:

Federal jurisdiction over the suit is based on diversity of citizenship, because a suit to enforce a patent licensing agreement does not arise under federal patent law. *E.g.*, *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1575 (Fed. Cir. 1997). The presence of a federal defense (here, patent misuse) is irrelevant to jurisdiction. *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988).

293 F.3d at 1016. The same is true for a declaratory judgment action, where the roles of plaintiff and defendant are reversed. As we have held before, "[i]n declaratory judgment cases, the well-pleaded complaint rule dictates that jurisdiction is determined by whether federal jurisdiction would exist over the presumed suit by the declaratory judgment defendant." *Ne. Ill. Reg'l Commuter R.R. Corp. v. Hoey Farine & Downes*, 212 F.3d 1010, 1014 (7th Cir. 2000), quoting *GNB Battery Techs., Inc. v. Gould, Inc.*,

65 F.3d 615, 619 (7th Cir. 1995). The Fifth Circuit case cited by Allan Block is not to the contrary, because that case involved the question whether an attempt to raise claims under a patent licensing agreement that had arisen out of the settlement of a patent infringement suit was barred by *res judicata. NaTec, Inc. v. DeTer Co.*, 28 F.3d 28 (5th Cir. 1994). Declining to reach the merits, the Fifth Circuit held that "[t]he right of the patent holder . . . to enforce the settlement agreements and obtain royalties for use of the patent after it expires is a substantial question of federal patent law." *Id.* at 28. This meant that the suit arose under 28 U.S.C. § 1338, and that appellate jurisdiction necessarily lay in the Federal Circuit, under 28 U.S.C. § 1295. In our case, the district court's jurisdiction over the present case was not based even in part on § 1338. Appellate jurisdiction therefore lies in this court, see 28 U.S.C. §§ 41, 1291, and we are free to proceed to the merits.

## III

This court reviews a district court's decision to grant summary judgment *de novo. Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). The parties appear to agree that the production agreement is a patent license, which is the way that we too would characterize it. County Materials essentially claims that the inclusion of the covenant not to compete in the patent license here was *per se* unlawful patent misuse and the improper result of patent leverage. While at one time this argument might have had traction, in certain circumstances, it is at least disfavored today, if not entirely rejected. Today, the concept of patent misuse is cabined first by statute, 35 U.S.C. § 271(d), which essentially eliminates from the field of "patent misuse" claims based on tying and refusals

to deal, unless the patent owner has market power, and second by case law. As the Federal Circuit explained in *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860 (Fed. Cir. 1997), there are certain practices that court identified as "constituting *per se* patent misuse," including "arrangements in which a patentee effectively extends the term of its patent by requiring post-expiration royalties." *Id.* at 869; see also *Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964) (holding that "a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful *per se*"). The practices identified in § 271(d), in contrast, may not be branded "misuse." *Va. Panel Corp.*, 133 F.3d at 869.

If a practice is not *per se* unlawful nor specifically excluded from a misuse analysis by § 271(d)

> a court must determine if that practice is reasonably within the patent grant, *i.e.*, that it relates to subject matter within the scope of the patent claims. If so, the practice does not have the effect of broadening the scope of the patent claims and thus cannot constitute patent misuse. If, on the other hand, the practice has the effect of extending the patentee's statutory rights and does so with an anti-competitive effect, that practice must then be analyzed in accordance with the rule of reason. Under the rule of reason, the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect.

*Id.* (internal citations and quotation marks omitted).

County Materials is not claiming that Allan Block was trying to extend the term of its patent by requiring post-

expiration royalties. It is wrong, therefore, to argue that some form of *per se* analysis applies here. (By the same token, we have no need to explore further the question whether it makes any economic sense to treat these arrangements so harshly. See *Scheiber*, 293 F.3d at 1020, which questions the economic soundness of *per se* condemnation.) The covenant not to compete in the agreement before us must therefore be assessed under a rule of reason. County Materials argues that this clause is unreasonable because it allows Allan Block to use its patent to exclude competition in the market from unpatented products.

As County Materials recognizes, it is essentially making a leveraging argument. It argues both that "[l]everage is presumed" and that there is a "proper method to conclude whether patent leverage was used." Whatever else one might say about leveraging theory (which as we noted in *Scheiber* has been criticized in academic circles), however, there is no doubt that there is nothing "presumed" about it outside the narrow confines of post-expiration royalties. In *Brulotte*, the Supreme Court held that there are both proper and improper uses of patent leverage. It acknowledged that "[a] patent empowers the owner to exact royalties as high as he can negotiate *with the leverage of that monopoly*[, b]ut to use that leverage to project those royalty payments beyond the life of the patent is analogous to an effort to enlarge the monopoly of the patent." 379 U.S. at 33 (emphasis added). But as both Congress and the Court have come to recognize, it may not be possible to exercise any leverage at all from a patent, if that patent does not confer any market power upon its owner. See *Ill. Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 42 (2006) (noting that Congress did not intend the mere existence of a patent to constitute the requisite "market power" for purposes of patent misuse and coming to the same conclusion for

antitrust purposes); see also *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257 (1979) (holding that it was not against public policy to enforce an agreement providing for deferred royalties on an invention, whether or not a patent was ultimately granted).

The Federal Circuit's decision in *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995 (Fed. Cir. 1986), provides helpful guidance in deciding whether a particular use of a patent might amount to "misuse" and thus furnish the defense to a licensing agreement that County Materials is looking for. In *Windsurfing*, the Federal Circuit said that patent misuse does not exist unless the party asserting it can "show that the patentee has impermissibly broadened the 'physical or temporal scope' of the patent grant *with anti-competitive effect.*" 782 F.3d at 1001 (emphasis added). This standard is satisfied by showing some overall harm to competition, and so, contrary to County Materials's contentions, it fully takes into account the fact that patents exist to "spur progress and innovation." The *Windsurfing* standard for patent misuse necessarily considers whether progress and innovation have been stymied and allows courts concretely to answer the vague question whether progress has been slowed.

Most of the cases on which County Materials relies come from an era before the Supreme Court recognized the efficiencies that might flow from vertical restrictions, which is the type of restriction we have when a patent owner (which does not compete in the manufacturing sector) imposes restraints on a manufacturing licensee. See generally *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 127 S. Ct. 2705, 2714 (2007); *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 734-36 (1988); *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 59 n.29 (1977). So, for example, *Columbus Auto. Corp. v. Oldberg Mfg. Co.*, 387 F.2d 643, 644 (10th Cir. 1968), assumed

that a clause in a patent license agreement that prohibited the licensee from handling competing products was unlawful. Similarly, the Third Circuit's decision in *National Lockwasher Co. v. George K. Garrett Co.*, 137 F.2d 255, 256 (3d Cir. 1943), assumed that an exclusive dealing arrangement, under which a patent licensee promised the licensor that it would work exclusively with the licensor's technology, was impermissible. This is not the assumption that would govern today, either in the courts or in the federal enforcement agencies. In the Antitrust Guidelines for the Licensing of Intellectual Property § 5.4 (April 6, 1995), the Department of Justice and the Federal Trade Commission wrote that "[i]n the intellectual property context, exclusive dealing occurs when a license prevents the licensee from licensing, selling, distributing, or using competing technologies. Exclusive dealing arrangements are evaluated under the rule of reason." As support for the latter statement, the Agencies cited *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320 (1961), in which the Supreme Court used the rule of reason to evaluate an exclusive dealing arrangement that did not involve intellectual property.

Anticompetitive effects, in short, are a critical element of any patent misuse case that is evaluated under a rule of reason approach. *Windsurfing* was one of the first cases to recognize this; it required "a factual determination [that] . . . reveal[s] that the overall effect of the license *tends to* restrain competition unlawfully in an appropriately defined relevant market." 782 F.2d at 1001-02 (emphasis added). A plaintiff is not required to show a defendant's subjective intent to obtain some kind of leverage over its patent. We assume, for the sake of argument, that it is also not necessary for a plaintiff to plead a case that would suffice to show that the antitrust laws have been violated. But, at the summary judgment stage, some evidence tending to show an adverse effect

in an economically sound relevant market is essential for any claim governed by the rule of reason.

With these principles in mind, we are ready to assess County Materials's case. To begin with, the Agreement between County Materials and Allan Block shows no sign of one-sidedness or abuse of power on Allan Block's part. County Materials received significant benefits, starting with the right to use the patented technology for the manufacture of the concrete blocks, and continuing with the right to use Allan Block's trademark and the right to receive supporting technical, marketing, and strategic services from Allan Block. In return, County Materials had to promise to pay royalties to Allan Block and to devote significant efforts to the exploitation of Allan Block's patent. If County Materials had been free to pick and choose among all potentially competing products on the market, Allan Block may have signed over the rights to use its patent and know-how for little or nothing in return. Allan Block's services alone have considerable value for any company undertaking the manufacture and sale of these products (or so the parties could have concluded), whether or not they are tied to a patented product. Nothing in these facts suggests that Allan Block needed or used any kind of leverage made possible by the patent to secure County Materials's promise to refrain from working with all but the designated two competing products, or its promise to refrain from using other products for 18 months after the expiration of the Agreement.

In fact, this was not a particularly onerous covenant not to compete. It allowed County Materials to continue to manufacture and sell not one but two competing products, which the district court reasoned would "guarantee plaintiff could always compete with defendant in the landscape block market." In addition, the clause had both temporal and geographical limits. It lasted for only

18 months after the Agreement's termination (a period which no one contends goes beyond the duration of Allan Block's patent) and applied only to County Materials's exclusive production territory, which was a section of Wisconsin. Although the non-compete clause may have hurt *County Materials's* ability to compete as aggressively as it would have liked in the concrete block market in northwest Wisconsin, there does not appear to be any evidence in the record showing that these limited require- ments have hurt *competition* for cement blocks in County Materials's former exclusive territory. In the related field of antitrust, the Supreme Court has said that "[i]t is axiomatic that the antitrust laws were passed for the protection of competition, not competitors." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993) (internal quotation marks omitted). *Independ- ent Ink*, *supra*, held that the principles underlying the patent misuse doctrine are closely aligned to those under- lying antitrust law. Without a showing that this clause had any effect on the broader market for concrete block (as opposed to an effect only on County Materials), its purported patent misuse defense cannot succeed.

## IV

Even if its patent misuse argument fails, County Materi- als maintains that the covenant not to compete violates general principles of Minnesota law, which applies here. Minnesota courts look to three factors in evaluating this kind of clause: it must (1) protect a legitimate inter- est of the party in whose favor it is imposed, (2) be rea- sonable as between the parties, and (3) not be injurious to the public. *Haynes v. Monson*, 224 N.W.2d 482, 484 (Minn. 1974). Minnesota decisions on point do not allocate the burden of proving or disproving these factors, but rather look to the court to weigh the evidence in support of or against each factor.

As for the first factor, we are satisfied that Allan Block had a legitimate interest in the other resources and intangibles that it gave to County Materials as part of the Agreement. "Legitimate interests that may be protected include a company's 'goodwill, trade secrets, and confidential information.'" *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 456 (Minn. Ct. App. 2001) (internal quotation marks omitted). County Materials claims that Allan Block "admitted it could not even identify any confidential information supplied to [County Materials]." That is not, however, a fair account of what the Allan Block officials said. Allan Block officer Robert Gravier testified that Allan Block "provided a stream of information relating to the technology over a 12-year period of time and encompassing manufacturing, molds, engineering, marketing and—and supporting the sale of the blocks under the license." This suffices to show that goodwill, confidential information, and trade secrets were given to County Materials. Allan Block employee Timothy Bott testified,

> I made several person[al] trips over to the [County Materials] Eau Claire facility. . . . There were numerous phone calls over the 12- or 13-year history of us working together, everything from mix design to actual issues, making the product. I was at the Eau Claire facility when they initially produced the first block. I assisted with the molds and other issues, training their staff on the differences between the different products and the configurations of the molds.

Bott also testified specifically as to the engineering support given to County Materials:

> We provide a service that's both formal and informal. The formal service allows for someone to have us prepare preliminary designs, working with the local engineer to assist in the facilitation . . . of [County

Materials] . . . landing a project that requires engineering. We work with the engineers that locally will review and do the final design, to educate them on the subject matter. This product concept and this design concept . . . is relatively new, and so *most engineers have little or no education relative to this*.

(emphasis added). None of this testimony has been disputed. The record shows that Allan Block had a legitimate interest in the resources and support that it gave to County Materials during their 12-year relationship.

The second factor is whether the agreement is reasonable as between the parties. Minnesota courts require that non-compete agreements not be greater than necessary to protect the legitimate business interest. *Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 799 (Minn. Ct. App. 1993). The *Dynamic* decision requires courts to consider "the nature and character of the employment, the nature and extent of the business, the time for which the restriction is imposed, the territorial extent of the covenant, and other pertinent conditions." *Id.* Although these factors were used in assessing an employee's non-compete clause in *Dynamic*, we find them equally useful in evaluating the non-compete provision at issue here. The provision is well-tailored to the legitimate interests of Allan Block. As part of its agreement, Allan Block provided a significant amount of start-up assistance and ongoing technical and marketing assistance to County Materials. These services presumably cost time and money. Requiring a lag time before County Materials can produce new products that compete with those previously licensed to it by Allan Block allows Allan Block to retain some of the value of its services. The Agreement was structured in a way that would eliminate any incentive on County Materials's part to use Allan Block to get its own concrete block business started and then breach the contract once it had taken advantage of Allan Block's assistance. Further

supporting the reasonableness of this restriction is the fact that it extends only to the geographic area in which County Materials sold the Allan Block blocks as part of the Agreement.

Further, when a licensee gets an exclusive patent license, as County Materials did here, it is benefitting from the patentee's property rights more than it would with a non-exclusive license. The licensee reaps the rewards of the patent up to the bounds of its exclusivity. Given this additional benefit, it seems only fair that the licensee can be assigned part of the responsibility of promoting the product in the broader market. Under a clause like this, the licensee has a stake in ensuring the success of the product. If the granting of an exclusive license is not itself a restraint on trade (as it is not, and no one in this case alleges otherwise), then requiring as a condition of that license that the licensee not undermine the value of the bargain is not unreasonable either.

The final factor is that the challenged restraint must not be injurious to the public. Because covenants not to compete are not categorically prohibited by Minnesota law, it must be the case that such a clause would not be deemed injurious to the public unless some particular harm was alleged. Minnesota courts have upheld non-compete provisions in markets where multiple producers of like goods are present, reasoning that the general public is not injured by a non-compete agreement because competition in the relevant market is healthy. *Bess v. Bothman*, 257 N.W.2d 791, 795 (Minn. 1977). County Materials has made no attempt to produce evidence that the relevant geographic area here is subject to a monopoly in landscape bricks made with Allan Block's technology. To the contrary, the fact that the production agreement listed two alternative products as exceptions to the non-compete provision is evidence that good substitutes for Allan Block products existed and were sold

within the territory covered by the Agreement. There is no basis to conclude that the non-compete provision violates Minnesota state law.

## V

Finally, County Materials argues that the district court abused its discretion in denying its motion to unseal portions of the record. A district court's decision to seal portions of the record is reviewed for abuse of discretion. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Rhinehart*, 467 U.S. at 36. Of course,

> [p]rotective orders entered during discovery in civil cases have . . . justification . . . and . . . limits. Confidentiality while information is being gathered not only protects trade secrets but also promotes disclosure: parties having arguable grounds to resist discovery are more likely to turn over their information if they know that the audience is limited and the court will entertain arguments focused on vital knowledge that a party wants to use later. . . . Information that is used at trial or otherwise becomes the basis of decision enters the public record. . . . Secrecy persists only if the court does not use the information to reach a decision on the merits.

*In re Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992). County Materials has not asserted that the district court's decision relied on sealed portions of the record (because it did not), and so it needs some other basis on which to challenge the court's ruling.

We have held that "the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding[, but t]hat interest does not always trump the property and privacy interests of the litigants." *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). The public's interest "can be overridden only if the . . . [privacy] interests predominate in the particular case, that is, only if there is good cause for sealing a part or the whole of the record in that case." *Id. Citizens* concluded that

> [t]here is no objection to an order that allows the parties to keep their trade secrets (or some other properly demarcated category of legitimately confidential information) out of the public record, provided the judge (1) satisfies himself that the parties know what a trade secret is and are acting in good faith in deciding which parts of the record are trade secrets and (2) makes explicit that either party and any interested member of the public can challenge the secreting of particular documents.

*Id*. at 946. The district court gave Allan Block a limited ability to keep under seal certain confidential documents, including transcripts of certain Allan Block employees and a few papers. Even though the district court may have acted too quickly when it summarily rejected County Materials's motion to unseal the documents, at this point in the case it is County Materials's burden to show how this prejudiced it. It has not done so. Rather than pointing to particular documents and explaining why they should have been unsealed, County Materials has argued instead that everything should have been unsealed. In fact, the district court did unseal portions of the sealed documents, including everything on which it relied in its opinion. Without more information from County Materials, we are not in a position to say either that the court abused its discretion by failing to unseal

more or that County Materials was prejudiced by the court's actions.

   The judgment of the district court is AFFIRMED.

A true Copy:

         Teste:

                          _____
                          *Clerk of the United States Court of*
                          *Appeals for the Seventh Circuit*