In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-1272

HANSEL DEBARTOLO and the H.M. DEBARTOLO, JR., M.D., S.C. PENSION PLAN and TRUST,

*Plaintiffs-Appellants,*

*v.*

HEALTHSOUTH CORPORATION, SURGICARE OF JOLIET, INC., and JOLIET SURGICAL CENTER, LIMITED PARTNERSHIP,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 2542—**James B. Zagel**, *Judge.*

ARGUED JANUARY 10, 2008—DECIDED JUNE 26, 2009

Before EASTERBROOK, *Chief Judge*, and RIPPLE and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. Hansel DeBartolo, a surgeon, is a limited partner in an ambulatory surgical center managed by the general partner, Surgicare of Joliet, Inc. When DeBartolo failed to certify that his practice at the facility met the threshold mandated by the partnership

agreement, Surgicare notified him that it was exercising a clause in the agreement allowing it to buy out his interest. DeBartolo balked and brought this federal action against Surgicare, its parent company, and the partnership, claiming that the term of the partnership agreement requiring him to conduct one-third of his surgical practice at the center violates federal criminal law and cannot be enforced. The district court dismissed the suit for failure to state a claim, but because this litigation is simply a state-law contract dispute between non-diverse parties, we vacate the judgment and remand with instructions to dismiss for lack of subject-matter jurisdiction.

## I.

The Medicare and Medicaid Patient Program Protection Act of 1987, *see* Pub. L. No. 100-93, 101 Stat. 680, recodified and strengthened existing criminal prohibitions against paying physicians to refer patients for medical services that might be covered by Medicare or Medicaid. When Congress debated this legislation, however, some healthcare providers expressed concern that it swept too broadly and would criminalize even innocuous fee arrangements. *See* Medicare and State Health Care Programs: Fraud and Abuse; Clarification of the Initial OIG Safe Harbor Provisions and Establishment of Additional Safe Harbor Provisions Under the Anti-Kickback Statute, 64 Fed. Reg. 63,518, 63,518 (Nov. 19, 1999); S. REP. No. 100-109, at 27 (1987), *as reprinted in* 1987 U.S.C.C.A.N. 682, 707-08. Consequently, the updated

statute, *see* 42 U.S.C. § 1320a-7b(b), commonly known as the Anti-Kickback Act, *see McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005), includes a "safe harbor" exception for any payment practice authorized by the Secretary of Health and Human Services, *see* Pub. L. No. 100-93, § 14(a), (b)(3), 101 Stat. 680 (1987) (codified at 42 U.S.C. § 1320a-7b(b)(3)(E)).

   In 1999 the Secretary of HHS used that safe-harbor authority to permit some payments from ambulatory surgical centers to qualified physician-investors. *See* Medicare and State Health Care Programs, 64 Fed. Reg. at 63,534 (now codified at 42 C.F.R. § 1001.952(r)). Ambulatory surgical centers are non-hospital facilities equipped with operating and recovery rooms where physicians perform outpatient surgeries and other procedures. *See* Ambulatory Surgery Center Association, Frequently Asked Questions About Ambulatory Surgery Centers, http://ascassociation.org/faqs/faqaboutascs/ (last visited May 28, 2009). HHS was concerned that physician ownership of ambulatory surgical centers could lead to violations of the Anti-Kickback Act because the promise of higher dividends (which would presumably be roughly proportional to the number of patients using the center) could provide a financial incentive for physician-owners to refer patients to the center. *See* Medicare and State Health Care Programs, 64 Fed. Reg. at 63,536-37. Indeed, a facility might even offer shares to physicians precisely so that it could buy referrals through the guise of dividends. *Id.* at 63,536. At the same time, however, HHS also acknowledged that ambulatory surgical centers

could legitimately serve as an extension of the office practice of physicians who would invest for practical reasons, including physical proximity and a desire to maintain quality control, and for those investor-physicians, the risk that dividends would induce improper referrals was low. *Id.* at 63,534-37. The Secretary of HHS therefore crafted safe-harbor conditions designed to authorize ambulatory surgical centers to make payments to physician-investors who use the center as an extension of their office practice. *Id.*

Four categories of ambulatory surgical centers received safe-harbor status, each with slightly different requirements. *See* 42 C.F.R. § 1001.952(r)(1)-(4). The parties agree that the facility in Joliet, Illinois, owned by the partnership and managed by Surgicare is a multi-specialty center and, hence, that 42 C.F.R. § 1001.952(r)(3) provides the relevant safe harbor. That section reserves safe-harbor status for payments to physician-owners who earn at least one-third of their medical income from performing Medicare-approved procedures and who perform at least one-third of those procedures at the center. *Id.* § 1001.952(r)(3)(ii), (iii), (r)(5). These two thresholds, collectively known as the "one-third/one-third" test, are designed to ensure that the physician-investor uses the center as an extension of his or her office practice, and not as an engine for illegal referral-based compensation. *See* Medicare and State Health Care Programs, 64 Fed. Reg. at 63,534-35.

In 2004 the owners of the Joliet facility sought shelter in this safe harbor and amended their partnership agree-

ment to require that physician-investors certify annually that they are meeting the "one-third/one-third" test. Another amendment compelled noncompliant physician-investors to sell out to Surgicare or other partners. DeBartolo had bought into the partnership (through a trust he controls) in 1981 for $250,000, and had practiced at the center for many years. Then in 2001 he lost his surgical privileges at the center and never again performed a procedure there. He still received dividends, although, including $91,000 in 2004, but after the partnership agreement was amended, he was unable to certify that his practice met the "one-third/one-third" test. And when DeBartolo did not vouch for his safe-harbor eligibility, Surgicare exercised its right to buy out his interest and sent him a check representing the cost of his shares and his portion of undistributed dividends.

DeBartolo refused the money and initiated this action in federal court for declaratory and injunctive relief. He argued that the 2004 amendment requiring physician-investors to conduct one-third of their surgical practice at the center, although written to track the safe-harbor regulation, *see* 42 C.F.R. § 1001.952(r)(3)(iii), cannot be reconciled with a different safe-harbor limitation, which mandates that the "terms on which an investment interest is offered to an investor must not be related to the previous or expected volume of referrals, services furnished, or the amount of business otherwise generated from that investor to the entity," *id.* § 1001.952(r)(3)(i). Observing that contract law makes unenforceable any agreement for the performance of an illegal act, DeBartolo asked the district court to

declare the amendments void in view of this perceived conflict, *see* 28 U.S.C. § 2201, and enjoin Surgicare from purchasing his shares. As for the district court's jurisdiction, DeBartolo cited 28 U.S.C. § 1331 and asserted that his lawsuit poses "a substantial federal question because the court is required to rule on the legality of an agreement that, as applied by the Defendants, violates the federal Anti-Kickback Statute."

Surgicare and the other partners did not challenge DeBartolo's invocation of federal jurisdiction and argued instead that the complaint should be dismissed for failure to state a claim. The defendants reasoned that DeBartolo, a private litigant, was seeking to enforce the Anti-Kickback Act, a criminal statute, and they insisted that Congress had not authorized a private right of action. Moreover, the defendants contended, the 2004 amendments to the partnership agreement are consistent with the safe harbor. DeBartolo replied that, although he indeed seeks a ruling that the partnership agreement's practice threshold is illegal, he is not pursuing a private right of action under the Anti-Kickback Act: he simply wants the district court to invalidate the 2004 amendments to the partnership agreement on the ground that giving effect to the practice threshold would violate the statute.

The district court heeded the defendants and construed DeBartolo's suit as an attempt at private enforcement of the Anti-Kickback Act. Relying on *West Allis Memorial Hospital, Inc. v. Bowen*, 852 F.2d 251, 255 (7th Cir. 1988), which holds that Congress did not authorize private

enforcement when it enacted the statute, the district court concluded that DeBartolo's suit fails to state a claim. The court added, however, that it was skeptical whether it even possessed subject-matter jurisdiction because, in the court's view, the lawsuit essentially is a state-law contract dispute between parties who are mostly citizens of Illinois.

## II.

In briefing this appeal, both parties included jurisdictional statements asserting that the district court possessed subject-matter jurisdiction because, they said, DeBartolo's lawsuit "arises under" the Anti-Kickback Act, a federal law. On the merits, however, DeBartolo argued that the district court had misconstrued his suit as an attempt at private enforcement of that statute when instead he wanted the court to apply principles of state contract law to invalidate the 2004 amendments to the partnership agreement. For their part, the defendants acknowledged the court's uncertainty about its subject-matter jurisdiction but nevertheless contended that the judgment should be affirmed because the court's merits analysis is correct.

The parties may be content to assume that the district court had jurisdiction to resolve this dispute, but we are not. Subject-matter jurisdiction is not an issue that can be brushed aside or satisfied by agreement between the litigants, *see Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir. 2000), and so at oral argument we pressed the

parties to explain why this lawsuit belongs in federal court. Neither side has ever asserted that jurisdiction is supplied by the diversity statute or by some other source apart from 28 U.S.C. § 1331. That jurisdictional provision empowers district courts to adjudicate civil matters arising under federal law, but the parties could not even agree about the nature of the claim presented by DeBartolo's lawsuit. At argument DeBartolo, perhaps hoping to salvage a second chance in state court by skirting an affirmance on the merits, quickly conceded that federal jurisdiction over his lawsuit is dubious because, he says, it is a contract dispute between non-diverse parties. In a post-argument sub-mission DeBartolo has gone further and now concedes that neither does this state-law contract action neces-sarily raise a substantial and disputed question of law concerning the Anti-Kickback Act which would demand resolution in a federal forum. *See Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315-16 (2005); *Bennett v. Southwest Airlines Co.*, 484 F.3d 907, 910-11 (7th Cir. 2007). The defendants, on the other hand, insist that their dispute with DeBartolo is not a contract action at all. Rather, they still maintain that DeBartolo is trying to privately enforce the Anti-Kickback Act and that, although misguided, this effort raises a claim under federal law. DeBartolo, they say, has simply seized the opportunity to change his legal theory to one under state contract law so as to frustrate federal jurisdiction.

In fact, DeBartolo's position has not shifted. Again and again—in response to the defendants' motion to dismiss,

in his appellate briefs, and at argument—DeBartolo has
insisted that the Anti-Kickback Act renders the 2004
amendments to the partnership agreement unenforceable
and thus provides him with a defense to Surgicare's
invocation of the amended agreement's practice
threshold to force him to liquidate his partnership inter-
est. He has consistently maintained that his suit is not an
attempt at private enforcement of the Anti-Kickback Act,
and we agree with DeBartolo that this litigation is simply
a state-law contract dispute. Simply put, the defendants
want to enforce the 2004 amendments to the partnership
agreement against DeBartolo, and he wants to prevent
them from doing so. It is the import of these competing
goals that the defendants fail to appreciate; Surgicare, not
DeBartolo, precipitated this dispute when it tried to force
DeBartolo to exit the partnership, and it is the defendants
who are unwilling to countenance DeBartolo's refusal to
accept Surgicare's money and relinquish his stake in the
Joliet facility. And rather than wait for the defendants to
sue to enforce their asserted contractual right to buy him
out, DeBartolo took preemptive action.

The Declaratory Judgment Act, 28 U.S.C. § 2201, allows
a party like DeBartolo who expects to eventually be
sued, to determine his rights and liabilities without
waiting for his adversary, the presumptive plaintiff, to
bring suit. *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237,
248 (1952); *Ceres Terminals, Inc. v. Indus. Comm'n of Ill.*, 53
F.3d 183, 185 (7th Cir. 1995). That act, however, is not an
independent grant of federal subject-matter jurisdiction,
so jurisdiction depends upon the nature of the
anticipated claims. *Samuel C. Johnson 1988 Trust v. Bayfield*

*County*, 520 F.3d 822, 827-28 (7th Cir. 2008). Thus, although the presence or absence of a federal question normally turns on an examination of the face of the plaintiff's complaint, *Nelson v. Stewart*, 422 F.3d 463, 466 (7th Cir. 2005), in an action for declaratory judgment the positions of the parties are reversed: the declaratory-judgment plaintiff would have been the defendant in the anticipated suit whose character determines the district court's jurisdiction, *e.g., County Materials Corp. v. Allan Block Corp.*, 502 F.3d 730, 734 (7th Cir. 2007), *cert. denied*, 128 S. Ct. 1709 (2008); *Ne. Ill. Reg'l Commuter R.R. Corp. v. Hoey Farina & Downes*, 212 F.3d 1010, 1014 (7th Cir. 2000); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir. 1996). Consequently, DeBartolo's complaint, which invokes the Anti-Kickback Act as a defense to his partners' anticipated state-law contract action to enforce their rights under the partnership agreement, cannot be a source of federal jurisdiction unless DeBartolo's statutory defense raises a pure question of federal law of the caliber at stake in *Grable & Sons Metal Products, Inc.*, 545 U.S. 308 (2005), which, even the defendants concede, it does not. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 16 (1983); *Wycoff Co.*, 344 U.S. at 248; *Samuel C. Johnson 1988 Trust*, 520 F.3d at 827-28; *Ne. Ill. Reg'l Commuter R.R. Corp.*, 212 F.3d at 1014. After all, a federal defense does not establish federal-question jurisdiction. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986); *Blue Cross Blue Shield of Ill. v. Cruz*, 495 F.3d 510, 512 (7th Cir. 2007). In the context of this action for a declaratory judgment, therefore, the allegations in DeBartolo's com-

plaint must demonstrate that the defendants could file a federal claim. *See Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 862 (11th Cir. 2008); *County Materials Corp.*, 502 F.3d at 734; *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 463 F.3d 473, 476-77 (6th Cir. 2006); *Ne. Ill. Reg'l Commuter R.R. Corp.*, 212 F.3d at 1014. The defendants, however, have not attempted to identify any federal claim they might have brought, and we can think of none. DeBartolo's lawsuit has belonged in state court all along, and it must be pursued in that forum if at all.

## III.

Accordingly, we VACATE the district court's order and REMAND with instructions to dismiss for lack of subject-matter jurisdiction.