**Douglas A. MAULER and Judith A. Mauler, Plaintiffs–Appellants,**

v.

**BAYFIELD COUNTY, a political subdivision of the State of Wisconsin, Defendants–Appellees.**

No. 02–1358.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 2002.

Decided Oct. 31, 2002.

Rehearing and Rehearing En Banc Denied Nov. 25, 2002.

Jon E. Kingstad (argued), Woodbury, MN, for Plaintiff-Appellant.

Richard K. Nordeng (argued), Stafford Rosenbaum, Madison, WI, for Defendant-Appellee.

Charles H. Montagne (argued), for Amicus Curiae.

Before FLAUM, Chief Judge, and EASTERBROOK and RIPPLE, Circuit Judges.

FLAUM, Chief Judge.

Douglas and Judith Mauler appeal the district court's finding that they hold no legal title or interest in a railroad right of way crossing their private property. The Maulers claim the former railway corridor was not a "right of way" subject to disposition under federal law and insist they have a valid reversionary interest in the land which has been unconstitutionally taken by Bayfield County. For the following reasons, we affirm the grant of summary judgment against the Maulers.

## I. BACKGROUND

Douglas and Judith Mauler claim title to part of an old railroad corridor that crosses their private property. The 100–foot wide strip of land once functioned as a railroad operated by the Union Pacific Railroad Company[1] ("Railroad") and now serves as a public recreational and snowmobile trail maintained by the Bayfield County Tourism and Recreation Department. The Railroad ceased using the strip as a working railroad in 1978 and conveyed its interest in the land to Bayfield County by way of the Bayfield County Snowmobile Alliance in 1989.

When the Maulers purchased their land in 1994 and 1996, they took title "subject to and together with all easements, restric-

tions, reservations, and exceptions as may constitute or otherwise affect the chain of title to said premises" and "less any rights of way of record." The chain of title to the Maulers' land shows that the Railroad originally conveyed the parcel—expressly reserving the railroad right of way—to a John Canfield in 1884. Although the deeds explicitly reserved the railroad right of way and Bayfield County had been using the strip as a public trail for several years, the Maulers claimed exclusive ownership of the land. Resorting to self-help, they attempted to block public access to the trail by building a five-foot high wooden barrier across the path near its entrance to their private property.

After unidentified persons removed the fence and the Maulers rebuilt it, Bayfield County sued the Maulers in Wisconsin state court to resolve the title dispute. The state court found Bayfield County held a valid interest in the land and permanently enjoined the Maulers from blocking the trail. The Maulers then filed essentially the same lawsuit against Bayfield County in federal district court. Bayfield County chose not to raise the affirmative defense of issue preclusion and sought a ruling on the merits because it wanted to establish the legal status of the trail as it passed through private property owned by the Maulers and others.

The original land grants in this case were part of a major initiative by the federal government to aid and encourage private companies in the building of railroads across frontier lands. As Congress dispersed grants of public lands to railroad companies and settlers claimed the same public lands as homesteads, disputes arose regarding the nature of and property

1. Union Pacific Railroad Company is a successor in interest to the Chicago and North Western Transportation Company, which was a successor in interest to the Chicago, St. Paul, Minneapolis and Omaha Railway Com-

pany, which had earlier merged with the company to whom the original state patent for the land was granted, the North Wisconsin Railroad Company.

rights associated with the railroad grants. In what continues to be the controlling case on point, the Supreme Court characterized these railroad grants as "limited fee[s], made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted." *Northern Pacific Ry. Co. v. Townsend,* 190 U.S. 267, 271, 23 S.Ct. 671, 47 L.Ed. 1044 (1903).

In 1922 Congress enacted 43 U.S.C. § 912, known as the Abandoned Railroad Right of Way Act, to dispose of the abandoned railroad lands to which the United States held a right of reverter under *Townsend.* Section 912 requires that public lands given by the United States for use as railroad rights of way be turned into public highways within one year of their abandonment or be given to adjacent landowners.[2] However, the National Trails

System Improvement Act of 1988, 16 U.S.C. § 1248(c), modifies § 912 to the extent that now those lands *not* converted to public highways within one year revert to the United States and not private landowners.[3] In conjunction with § 912, 43 U.S.C. § 913 permits railroad companies to convey their public land grants to states, counties, or municipalities for use as public highways or streets.[4]

The Maulers claim the United States did not retain a reversionary interest when it gave the land in question to Wisconsin in 1856 and 1864 "for the purpose of aiding in the construction of a railroad."[5] They also contend that neither *Townsend* nor subsequently enacted federal laws, namely 43 U.S.C. §§ 912, 913 and 16 U.S.C. § 1248(c), apply in this case to create a reversionary interest in the United States because the original grant of land to Wisconsin did not use the exact words "right

**2.** Section 912 declares that "[w]henever public lands of the United States have been or may be granted to any railroad company for use as a right of way for its railroad or as sites for railroad structures of any kind, and use and occupancy of said lands for such purposes has ceased or shall hereafter cease, whether by forfeiture or by abandonment by said railroad company declared or decreed by a court of competent jurisdiction or by Act of Congress, then and thereupon all right, title, interest, and estate of the United States in said lands shall, except such part thereof as may be embraced in a public highway legally established within one year after the date of said decree or forfeiture or abandonment be transferred to and vested in any person, firm, or corporation, assigns, or successors in title and interest to whom or to which title of the United States may have been or may be granted, conveying or purporting to convey the whole of the legal subdivision or subdivisions traversed or occupied by such railroad or railroad structures of any kind as aforesaid . . . ." 43 U.S.C. § 912 (2000).

**3.** Section 1248(c) provides that "any and all right, title, interest, and estate of the United States in all rights-of-way of the type described in the Act of March 8, 1922 (43 U.S.C.

§ 912), shall remain in the United States upon abandonment or forfeiture of such rights-of-way, or portions thereof, except to the extent that any such right-of-way, or portion thereof, is embraced within a public highway no later than one year after a determination of abandonment or forfeiture, as provided under such Act." 16 U.S.C. § 1248(c) (2000).

**4.** Section 913 states that "[a]ll railroad companies to which grants for rights of way through the public lands have been made by Congress, or their successors in interest or assigns, are hereby authorized to convey to any State, county, or municipality any portion of such right of way to be used as a public highway or street." 43 U.S.C. § 913 (2000).

**5.** Both the 1856 and 1864 Acts of Congress giving the federal land to Wisconsin used the same language and both limited the manner in which the land was to be used, including that "the said railroads shall be and remain public highways." The state patent which conveyed the land in question was given by Wisconsin to the Railroad in fee simple "in pursuance of the said several Acts of Congress."

of way." Instead, the Maulers assert that they hold a valid reversionary interest in the strip which vested in them, as successors in interest to John Canfield, when the Railroad ceased using the land as a railway. They further argue that the Railroad's conveyance of the strip to Bayfield County by way of the Snowmobile Alliance and Bayfield County's dedication of the strip as a public recreational trail are both invalid.

On cross-motions for summary judgment, the district court held that the former railway corridor was a "right of way" subject to disposition under 43 U.S.C. § 912, as modified by 16 U.S.C. § 1248(c), that Bayfield County properly acquired title to the strip from the Railroad pursuant to 43 U.S.C. § 913, and that the Maulers lacked standing to pursue their takings claim because they never held a valid legal interest in the railway corridor.

## II. Discussion

We review the district court's grant of summary judgment *de novo*. Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, we view all facts and draw all inferences in favor of the nonmovant. *Outlaw v. Newkirk*, 259 F.3d 833, 836 (7th Cir. 2001). If the record as a whole "could not

lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotations omitted).

The Maulers raise two issues in this appeal. First, they argue the district court erred in finding that the original federal land grants to the Railroad were rights of way with an implied right of reverter to the United States and that the Railroad properly disposed of its interest in the strip according to 43 U.S.C. § 913 and 43 U.S.C. § 912, as modified by 16 U.S.C. § 1248(c). Second, the Maulers claim they hold a valid legal interest in the land which entitles them to compensation from Bayfield County's "taking" of the former railroad corridor for public use as a recreational trail. Because we agree with the district court that 43 U.S.C. §§ 912, 913 and 16 U.S.C. § 1248(c) apply to the strip and the Railroad conveyed the land to Bayfield County in accordance with these statutes, we conclude the Maulers hold no present or reversionary legal interest in the land. And since the Maulers do not own the land, they cannot prevail on their takings claim.

The Maulers argue that 43 U.S.C. §§ 912, 913 and 16 U.S.C. § 1248(c) do not apply to the former railroad corridor and the land is not subject to reversion to the United States because it is not a "right of way" within the meaning of the statutes. Instead, the Maulers invoke a state common law precedent which they read as automatically vesting title to the strip in them as adjoining landowners upon its abandonment by the Railroad.[6] *See Poll-*

---

**6.** In its brief Bayfield County argues the Railroad never officially abandoned the railway corridor, so the United States' reversionary interest in the land never vested. This argument is not challenged on appeal by the Maulers because they had argued that the United States held no reversionary interest *at all,* and

title to the land automatically vested in the Maulers at the time the Railroad ceased using it as a railway. The district court rejected the Maulers' argument and found instead that the Railroad had authority to give away its interest in the land under § 913 even without

*now v. State Dept. of Natural Resources,* 88 Wis.2d 350, 276 N.W.2d 738 (1979) (holding in case where railroad grant was an easement and not a right of way that title vested in abutting landowner once railroad abandoned land). The Maulers' argument fails for two reasons. First, unlike *Pollnow,* the original grants of land in this case were grants to the Railroad in fee simple that included an implied right of reverter to the United States under the rationale first espoused in *Townsend* and later embraced by 43 U.S.C. § 912. Second, § 913 expressly permits the Railroad to convey its strip of land to Bayfield County for use as a public highway. Thus, even if we did not find that the United States retained a right of reverter under the original grant, the Railroad's interest in the land is now properly vested in Bayfield County through the county's dedication of the land as a public recreational trail. Either way the Maulers have no legal interest in the former railroad corridor.

In *Townsend* the Supreme Court held that private individuals could not acquire title to railroad rights of way through adverse possession. 190 U.S. at 272, 23 S.Ct. 671. The Court reasoned that Congress' grant of federal lands conferred title only for the limited purpose of building a railroad through the public domain and that purpose could not be abandoned in favor of the railroad or any other private entity. *Id.* The *Townsend* Court thus concluded that the railroad grant was a "limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted." *Id.*

■ The Maulers argue that *Townsend* is inapplicable to this case because the *Townsend* land grant included the words "right of way" where the land grant in this

case does not. We find this to be a distinction without a difference. Nothing in the *Townsend* opinion suggests the Court intended to distinguish between a land grant for a "right of way ... for the construction of a railroad" (the *Townsend* grant) and a land grant "for the purpose of aiding the construction of a railroad" (the grant in this case). Rather, the *Townsend* Court decided that Congress made all of its railroad land grants "in order that the obligations to the United States, assumed in the acceptance of the act, might be performed." 190 U.S. at 272, 23 S.Ct. 671. Because the land grants in this case were comprised of federal lands in the public domain and were given for exactly the same purpose as the grant in *Townsend,* we readily conclude that the strip of land at issue here was subject to an implied right of reverter in the United States.

Likewise, we find the strip of land subject to disposition under 43 U.S.C. §§ 912, 913 and 16 U.S.C. § 1248(c). The language of § 912 ("public lands of the United States ... granted to any railroad company for use as a right of way for its railroad") and § 913 ("[a]ll railroad companies to which grants for rights of way through the public lands have been made by Congress") plainly refers to all Congressional grants of public lands for railroad rights of way. Moreover, the legislative history of § 912 reveals that Congress enacted the law primarily to resolve title disputes with respect to abandoned and forfeited federal railroad lands of the type discussed in *Townsend.* S. REP. NO. 67–388 (1922); H.R. REP. NO. 67–217 (1921). And courts interpreting these statutes have consistently found other Congressional grants of federal lands for railroad rights of way subject to disposition under §§ 912 and 913. *See, e.g., Vieux v. East Bay Reg'l*

seeking a formal declaration of abandonment, and Bayfield County satisfied the statute's

public highway requirement by dedicating the land for use as a public recreational trail.

*Park Dist.,* 906 F.2d 1330 (9th Cir.1990); *Idaho v. Oregon Short Line R.R. Co.,* 617 F.Supp. 207 (D.Id.1985); *Marlow v. Malone,* 315 Ill.App.3d 807, 248 Ill.Dec. 487, 734 N.E.2d 195 (2000). Clearly Congress assumed the United States possessed a reversionary interest in railroad rights of way, else it would make little sense for Congress to have passed laws like §§ 912, 913 and § 1248(c) to dispose of land the federal government did not own.

■ Applying these federal statutes to the land in this case, we find that § 912, as modified by § 1248(c), vests a reversionary interest in the strip in the United States and not the Maulers. When the Railroad conveyed the strip to Bayfield County and Bayfield County established a public highway on the land as required by § 913, the United States' reversionary interest expired in favor of Bayfield County. In short, the Maulers never possessed a legal interest in the former railroad corridor.

■ Turning to the second issue on appeal, the Mauler's takings claim, we begin and end our analysis with our finding that the Maulers do not own the land they claim has been taken from them. The Maulers argue they have been denied their right to exclude the public from their land because of Bayfield County's "permanent physical occupation" of the former railroad corridor as a recreational trail. Because we find the Maulers do not have any legal interest in the land, we conclude as the district court did that they lack standing to pursue their constitutional due process challenge to Bayfield County's use of the strip as a public trail.

### III. CONCLUSION

We find that 43 U.S.C. § 912, as modified by 16 U.S.C. § 1248(c), vests a reversionary interest in the strip of land in the United States and not the Maulers, that § 913 authorizes the Railroad's transfer of the land to Bayfield County and validates the county's use of the land as a public recreational trail, and that the Maulers' takings claim must fail because they hold no valid legal interest in the strip of land.

For these reasons we AFFIRM the district court's grant of summary judgment in favor of defendant-appellee Bayfield County.