In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 07-1348

SAMUEL C. JOHNSON 1988 TRUST, et al.,

*Plaintiffs-Appellees,*

*v.*

BAYFIELD COUNTY, WISCONSIN,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 06-C-348-S—**John C. Shabaz**, *Judge.*

———————

ARGUED NOVEMBER 8, 2007—DECIDED APRIL 2, 2008

———————

Before EASTERBROOK, *Chief Judge,* and FLAUM and KANNE, *Circuit Judges.*

FLAUM, *Circuit Judge.* At issue in this lawsuit are Bayfield County's ("the County") ongoing efforts to convert unused railway lines in the County into snowmobile trails. As the legal basis for its plans, the County alleges that the United States retains a reversionary interest in these railroad right-of-ways and that Congress has established that, pursuant to this reversionary interest, if the railway lines are formally abandoned, local governments are then provided with a one-year window with

which to establish a public highway if they so choose. 43 U.S.C. § 912; 16 U.S.C. § 1248(c). Local landowners ("Landowners"), who have been using these old railway lines as their own, took preemptive measures and filed a quiet title action seeking declaratory relief against the County and the United States, claiming that the United States had not retained a reversionary interest over these particular railway lines, and, in the alternative, that the land had vested in the Landowners because the one-year period from the date of abandonment had already lapsed. The district court never made a determination on these claims. Instead, the United States filed a Disclaimer of Interest in the property. *See* 28 U.S.C. § 2409a(e). The district court then determined that, even assuming that the United States retained a reversionary interest and the railway lines had not been abandoned, the Disclaimer of Interest had the same effect as eliminating the United States's reversionary interest, which the court classified as a necessary predicate for the County to have any interest in the railway lines. Accordingly, the district court found for the Landowners. For the following reasons, however, we vacate the grant of summary judgment for the Landowners, vacate the quiet title finding in the Landowners' favor, and remand for further proceedings.

## I.  Background

### A.  Grants to the Railroads

In the 1850's and 1860's, Congress passed a series of laws granting tracts of land and right-of-ways for purposes of constructing railway lines. Particularly relevant to this case are Acts enacted on August 4, 1852; June 3, 1856; and May 5, 1864. *See* ch. 80, 10 Stat. 28, 28-29 (1852); ch. 43, 11 Stat. 20, 20-21 (1856); and ch. 80, 13 Stat. 66, 66-68

(1864). The parties agree that the railroad's property interest in the railway line traversing the property owned by Samuel C. Johnson 1988 Trust and Imogene P. Johnson ("SC Johnsons") was originally acquired by the railroad via the 1856 and 1864 Acts. This is because those Acts governed odd numbered sections of property, which would include the SC Johnsons' land, located at Section 21, Township 44 North, Range 7 West in Bayport County. The parties are in disagreement, however, as to whether the United States maintained a reversionary interest in this land. According to the Landowners, the 1856 and 1864 Acts vested the title of fee simple absolute with the State of Wisconsin, which then in turn transferred this full property interest to the railroad companies. *See* 1874 Wis. Sess. Laws ch. 126, § 1. The County, however, argues that the Western District of Wisconsin and this Court have already found that the United States retained a reversionary interest in odd-numbered sections of Bayfield County granted to the State of Wisconsin for the purpose of constructing railroads under the 1856 and 1864 Acts. *Mauler v. Bayfield County,* 204 F. Supp. 2d 1168, 1176 (W.D. Wis. 2001); *Mauler v. Bayfield County*, 309 F.3d 997, 1001 (7th Cir. 2002).

Also in dispute is the United States's reversionary interest in the parcels of land owned by John and Kay Hawksford ("Hawksfords") and Dean and Kathryn Johnson ("DK Johnsons"), which lie in an even section—specifically, Government Lot 2 of Section 32, Township 44 North, Range 7 West, in Bayfield County. According to the Landowners, railroads seeking rights of way in even-numbered sections generally obtained this interest through private conveyance or condemnation on a parcel-by-parcel basis. With respect to the property in Section 32, the Landowners maintain that a private home-

steader initially acquired title to the property in 1882 by patent from the United States, without the United States retaining any reversionary interest. Approximately seven months later, the state condemned a portion of this property, completely outside any federal land grant program.

The County disagrees with the Landowners' characterization of the property interest over the railway line in Section 32. The Act of 1852 granted a right-of-way to railways "charted within ten years hereafter" on the United States's public lands, with construction then needing to be completed within the next fifteen years. Ch. 80, § 1, 10 Stat. 28 (1852). The County maintains that the railway line in Section 32 is covered by this Act because, even though construction on the line did not begin until the mid-1870's, the railroad filed a map with the Land Office in 1858 that showed the intended railway line. The County argues that court decisions have not required railroads to have strictly complied with statutorily imposed time limits, and that thus, with the Act of 1852 applying here, the United States retained a reversionary interest in the property. According to the County, the 1882 land grant to the homesteader and subsequent state condemnation proceeding did not affect the United States's reversionary interest in the railway line.

### B. Congress's Scheme for the United States's Reversionary Interests

The basis for finding that the United States holds a reversionary interest in the railway lines can be traced back to a 1903 Supreme Court decision, where the Court characterized railroad grants as a "limited fee, made on an implied condition of reverter in the event that the com-

pany ceased to use or retain the land for the purpose for which it was granted." *Mauler*, 309 F.3d at 1001 (quoting *Northern Pacific Ry. Co. v. Townsend*, 190 U.S. 267, 271 (1903)). Subsequently, in 1922, Congress passed the Abandoned Railroad Right of Way Act, 43 U.S.C. § 912, which addressed how Congress wished to dispose of its reversionary interest. *Id.*, at 999. Section 912 provided that when a railway line was declared abandoned by a proper court or by Congress, the United States's reversionary interest would vest in the adjacent landowner, unless the abandoned line was converted into a public highway within one year of the declaration of abandonment. 43 U.S.C. § 912.[1] At approximately the same time,

---

[1] The full text of 43 U.S.C. § 912 provides:

Whenever public lands of the United States have been or may be granted to any railroad company for use as a right of way for its railroad or as sites for railroad structures of any kind, and use and occupancy of said lands for such purposes has ceased or shall hereafter cease, whether by forfeiture or by abandonment by said railroad company declared or decreed by a court of competent jurisdiction or by Act of Congress, then and thereupon all right, title, interest, and estate of the United States in said lands shall, except such part thereof as may be embraced in a public highway legally established within one year after the date of said decree or forfeiture or abandonment be transferred to and vested in any person, firm, or corporation, assigns, or successors in title and interest to whom or to which title of the United States may have been or may be granted, conveying or purporting to convey the whole of the legal subdivision or subdivisions traversed or occupied by such railroad or railroad structures of any kind as aforesaid, except lands within a municipality the title to which, upon forfeiture or abandonment, as herein

(continued...)

Congress also passed another law permitting the rail-
roads to sell their right of way to state or local govern-
ments to establish public highways.[2] Pub. L. No. 66-217,
41 Stat. 621 (enacted in 1920, codified at 43 U.S.C. § 913).
In an effort to preserve these abandoned railway lines
for use as trails, Congress amended § 912 in 1988. 16 U.S.C.
§ 1248(c). Under this amendment, abandoned railway
lines would no longer pass to the adjacent landowner,
but instead the United States would retain title to the
property, provided again that the line was not converted
to a public highway within one year of a determination
of abandonment.[3] *Id.*

---

[1]  (...continued)
    provided, shall vest in such municipality, and this by
    virtue of the patent thereto and without the necessity of any
    other or further conveyance or assurance of any kind or
    nature whatsoever. . . .

[2]  This statute, 43 U.S.C. § 913, reads in full:

    All railroad companies to which grants for rights of way
    through the public lands have been made by Congress,
    or their successors in interest or assigns, are hereby autho-
    rized to convey to any State, county, or municipality any
    portion of such right of way to be used as a public high-
    way or street: Provided, That no such conveyance shall
    have the effect to diminish the right of way of such rail-
    road company to a less width than fifty feet on each side
    of the center of the main tract of the railroad as now estab-
    lished and maintained.

[3]  The full text of this amendment, 16 U.S.C. § 1248(c), reads:

    Commencing upon the date of enactment of this subsec-
    tion [enacted Oct. 4, 1988], any and all right, title, interest,
    and estate of the United States in all rights-of-way of the
    type described in the Act of March 8, 1922 (43 U.S.C. 912),
                                          (continued...)

### C.  Dissolution of the Railway Line

In addition to disputing whether the United States maintained a reversionary interest in these railway lines, the County and the Landowners also dispute whether the railway lines have already been abandoned in accord with § 912 and § 1248(c). In 1974, the Chicago & North Western Transportation Company filed a Notice of Proposed Abandonment with the Interstate Commerce Commission ("ICC") with respect to the portion of railway line running through Bayfield County that is relevant to this case. Then, in 1978, the ICC issued a Certificate and Order permitting the abandonment of the railway line. One month later, in April 1978, the railroad cancelled its tariffs on the line, and in 1980, the railroad pulled up the tracks. In November 1979, soon before the tracks were pulled up, the County had declined an opportunity to purchase this right-of-way.

According to the Landowners, the railway line was abandoned in accord with the terms of § 912 in either 1978 or 1980,[4] while the County contends that a proper

---

[3]  (...continued)
   shall remain in the United States upon the abandonment or forfeiture of such rights-of-way, or portions thereof, except to the extent that any such right-of-way, or portion thereof, is embraced within a public highway no later than one year after a determination of abandonment or forfeiture, as provided under such Act.

[4]  The Landowners offer various theories as to why this is the case, including: 1) that the ICC's 1978 Certificate and Order operated as an Act of Congress; 2) that the decision in *State v. Holmgren,* 332 N.W.2d 311 (Wis. Ct. App. 1983), holding that
(continued...)

declaration of abandonment has not yet been issued. Regardless, while the County disputes the validity of the following actions, on March 4, 1980, the railroad executed a quitclaim deed purporting to convey its interests over all the property at issue to the SC Johnsons. The SC Johnsons then donated the majority of these lands to the Forest Service, while retaining some of the land for them-selves, and issuing quitclaim deeds to other parties, including the Hawksfords and DK Johnsons, whose properties abutted the right of way.

### D.  Procedural History

This lawsuit arose out of the County's ongoing efforts to convert and integrate abandoned railway lines into the 500 miles of snowmobile trails that already exist in the County. *See* Travel Info: Ashland and Bayfield County, Snowmobile Report & Information, http://www. travelbayfieldcounty.com/files/rsnowmobilefr.html (last visited March 14, 2008). In the hopes of preventing the County from moving forward with its plan, the Landown-ers filed an action in federal court against the County and the United States seeking declaratory relief, *see* 28 U.S.C. § 2201, under the Quiet Title Act, 28 U.S.C. § 2409a. On

---

[4]  (...continued)
the railway lines over other properties in Bayfield County had been abandoned, similarly served as a "decree[ ] by a court of competent jurisdiction" that the property at issue in this suit had been abandoned; and 3) that the court can make its declaration of abandonment retroactive, such that this court or the district court could issue a declaration that the railway line was abandoned in 1978. *See Vieux v. East Bay Regional Park Dist.,* 906 F.2d 1330, 1340 (9th Cir. 1990).

November 1, 2006, the Landowners filed a motion for summary judgment, contending that § 912, § 913, and § 1248(c) were inapplicable because the United States had not retained any reversionary interests over the former railway lines, and alternatively, that the railway lines had been abandoned for purposes of § 912 in 1978, and thus the County could no longer lay claim to the property. The County filed its brief opposing the Landowners' motion for summary judgment on November 21, 2006, disputing both of the Landowners' claims. On that same date, the United States filed a Disclaimer of Interest in the property. This Disclaimer, submitted by the United States Attorney's Office, stated that the United States had determined that the lands in question had been deeded without the United States retaining any reversionary interest in the property, and that accordingly, the United States, under 28 U.S.C. § 2409a(e), disclaimed all interest in the property at issue in this suit. The following day, the district court issued an order confirming the Disclaimer of Interest. Subsequently, the Landowners filed a motion to dismiss, claiming that the Disclaimer resolved the issues in their favor in the case.

On January 19, 2007, the district court dismissed the United States from the case and issued its Memorandum and Order on the Landowners' motions. After establishing that despite the Disclaimer, an independent basis for federal jurisdiction still existed, *see* 28 U.S.C. § 2409a(e), the district court proceeded to analyze the impact the Disclaimer had on the County's asserted property rights over the railway lines. The court determined that the County did not acquire any interest in the railway lines until after they were abandoned, and that prior to that date, the United States could treat its reversionary interests as it wished. Accordingly, assuming abandonment had not yet occurred,

the United States's Disclaimer of Interest destroyed any property interest the County had in the railway lines. Based on these findings, the district court granted the Landowners' motion for summary judgment and provided declaratory relief to the Landowners by quieting title in their favor with respect to any claim to the property made by the County under 43 U.S.C. § 912 or 16 U.S.C. § 1248(c).

## II.  Analysis

### A.  Federal Jurisdiction

Before proceeding to examine the Disclaimer of Interest's effect on the merits of this suit, we must first determine whether this Court has jurisdiction over this case. The Landowners brought suit under the Declaratory Judgment Act, 28 U.S.C. § 2201, to quiet title in the disputed property. When the suit was originally filed, federal jurisdiction existed by virtue of the fact that the United States was named as a defendant. *See* 28 U.S.C. § 2409a(a); *see also* 28 U.S.C. § 1346(f). This basis for jurisdiction, however, was eliminated when the district court confirmed the Disclaimer of Interest. 28 U.S.C. § 2409a(e). Thus, in order for the suit to have remained in federal court, an independent basis for federal jurisdiction was required. *Id.* The district court properly found that such an independent basis exists.

Although the Landowners brought suit under the Declaratory Judgment Act, this Act does not serve as an independent basis for federal jurisdiction. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 935 (7th Cir. 2008) (citing *GNB Battery Technologies v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995)). Instead, "jurisdiction is determined by whether federal question jurisdiction would exist over

the presumed suit by the declaratory judgment defendant." *Id.* (quoting *GNB Battery Technologies*, 65 F.3d at 619). Thus, the issue is whether the County's presumed complaint against the Landowners, on its face, would include an action "arising under" federal law. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); 28 U.S.C. § 1331. Here, the County's property interest in the railway lines is dependent upon the United States retaining a reversionary interest in the land pursuant to the congressional acts deeding the land away, and then rests upon Congress's disposal of this reversionary interest under 43 U.S.C. § 912 and 16 U.S.C. § 1248(c). The centrality of these federal laws' interpretation to the proper adjudication of this suit gives rise to federal jurisdiction. This comports with a long history of Supreme Court decisions finding federal jurisdiction to exist over state quiet title actions. *See Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315-16 (2005) (finding federal jurisdiction when the issue of notice under a federal statute was a critical element in a quiet title claim) (citing *Hopkins v. Walker*, 244 U.S. 486, 490-91 (1917) (federal jurisdiction exists over a quiet title action when the construction and effect of a federal mining law was an essential, real, and substantial part of the plaintiff's claim); *Northern Pacific R. Co. v. Soderberg*, 188 U.S. 526, 528 (1903); *Wilson Cypress Co. v. Del Pozo y Marcos*, 236 U.S. 635, 643-644, (1915)). Accordingly, having found that federal jurisdiction exists despite the United States's Disclaimer of Interest, we turn to the merits on this appeal.

## B.  Effect of Disclaimer of Interest

In reviewing the lower court's decision on the merits, because this is an appeal from a grant of the Landowners'

motion for summary judgment, we review the decision *de novo*, *Jackson v. County of Racine*, 474 F.3d 493, 498 (7th Cir. 2007), drawing all facts and reasonable inferences in the light most favorable to the nonmovant, the County. *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citing *South v. Ill. EPA*, 495 F.3d 747, 751 (7th Cir. 2007)). The facts, however, appear to be uncontested, with the dispute solely involving the legal property interests held by the different parties. Thus, to the extent that the resolution of the Disclaimer's effect on the County's interest involves a pure question of law, drawing upon issues of statutory interpretation, this too we review *de novo*. *Zeigler Coal Co. v. Office of Workers' Comp. Programs*, 490 F.3d 609, 613 (7th Cir. 2007) ("We review pure questions of law de novo."); *United States v. Genendo Pharm., N.V.*, 485 F.3d 958, 962 (7th Cir. 2007) ("a question of statutory interpretation [is] subject to de novo review").

We note at the outset that we are provided with little guidance in addressing the effect of the United States's Disclaimer of Interest. The statute itself, under which the United States disclaimed its interest, fails to define "disclaimer," does not address under what circumstances a district court should "confirm" such a disclaimer, and fails to address what effect, if any, such a disclaimer has on a suit other than to divest the federal court of juris-diction under 28 U.S.C. § 1346(f). *See* 28 U.S.C. § 2409a(e). Similarly, little help can be found on this matter by turning to our sister circuits or the lower federal courts. Fortunately, our task here is a narrow one. Despite the lack of clarity as to what effect the Disclaimer has on the County's interest, the parties in this suit do not dispute that the United States properly issued its Disclaimer of Interest, and the County does not directly challenge the

district court's confirmation of this Disclaimer, nor raise any charge that the United States acted in bad faith. Accordingly, we also find no issue with the United States's filing, and the district court's confirmation, of the Disclaimer.[5] Furthermore, it is unnecessary for us to deter-

---

[5] We do note, however, that there is some tension in the case law as to whether a district court, prior to confirming the United States's disclaimer, is to ascertain the validity of the United States's justification for issuing the disclaimer, or whether confirmation is a mere formality. *Compare Donnelly v. United States*, 850 F.2d 1313, 1317 (9th Cir. 1988) (discussing how the district court confirmed the disclaimer as "valid" in light of the United States's proper conveyance of the disputed property in accord with the governing statute), *with W. H. Pugh Coal Co. v. United States,* 418 F. Supp. 538, 539 (E.D. Wis. 1976) ("confirmation of the disclaimer of the United States is deemed a formality and one which this court should not deny"). There appears to be greater uniformity among the courts, however, in finding that a disclaimer should not be confirmed if the United States is acting in bad faith. *See Donnelly*, 850 F.2d at 1317 (also noting that the district court found the disclaimer to be made in "good faith"); *see also W. H. Pugh Coal Co.*, 418 F. Supp. at 539 (after confirming disclaimer, stating, "If this were a situation in which the state and federal authorities were attempting to whipsaw the plaintiff and to harrass it so as to avoid a resolution of this dispute, I would be reluctant to grant the dismissal."). In a case such as this, where the United States has filed a formal Disclaimer of Interest as part of the quiet title suit (as opposed to a claim by the United States, for example, that an alleged prior conveyance of its property served as its disclaimer of interest), we find it unnecessary for the court to examine the validity of the underlying factual and legal basis offered for filing the Disclaimer, although confirmation could

(continued...)

mine what effect the United States's Disclaimer had on parties aside from the County, since the only issue to determine in this suit is whether the County has superior title to the Landowners by virtue of § 912 and § 1248(c). *See United States v. Oregon,* 295 U.S. 1, 24-25 (1935) ("A bill to quiet title may not be defeated by showing that the plaintiff's interest, otherwise sufficient to support the bill, is subject to possibly superior rights in third persons not parties to the suit. It is enough that the interest asserted by the plaintiff in possession of land is superior to that of those who are parties defendant.") (internal citations omitted). Thus, our focus is truly limited to ascertaining the Disclaimer's effect on the County's property interest in the railway lines.

In trying to determine whether the Disclaimer served to destroy the County's property interest, it is first necessary to define "disclaimer." Given that the statute does not define the term, we turn to the common understanding of the word, which is that the Disclaimer operates as "[a] renunciation of [the United States's] legal right or claim" over the railway lines. BLACK'S LAW DICTIONARY 496 (8th ed. 2004); *see Bel v. United States*, 452 F.2d 683, 693 (5th Cir. 1971), *cert. denied*, 406 U.S. 919 (1972) (quoting *City Nat'l Bank & Trust Co. v. United States*, 203 F. Supp. 398, 402 (S.D. Ohio 1962) (defining disclaimer as "the repudiation or renunciation of a claim or power invested in a person for which he formally alleged to be his. The refusal, or rejection of an estate or right offered to a person. The disavowal, denial, or renunciation of an interest, right, or

---

[5]  (...continued)

be withheld if the United States were found to have acted in bad faith.

property imputed to a person or alleged to be his."); *see* BLACK'S LAW DICTIONARY 417 (5th ed. 1979) (defining "disclaimer" in the context of estates as "[t]he act by which a party refuses to accept an estate which has been conveyed to him."). If the Disclaimer is deemed a "renunciation," the issue then becomes what it is that is being renounced—that the United States ever held a reversionary interest in the land, or merely the United States's current reversionary interest in the property. If it is the former, it would mean that § 912 and § 1248(c) were never applicable to the railway lines at issue in the suit. If instead it is the latter, then the question is whether such a disclaimer still renders § 912 and § 1248(c) wholly inapplicable to the railway lines, or whether, under the statutory scheme in § 912 and § 1248(c), the County's interest is destroyed by the Disclaimer.

We turn first to the question of whether the United States's Disclaimer has the effect of renouncing that the United States ever held a reversionary interest in the land at issue. As the district court observed below, as a general matter, under common law principles for trusts and estates, a disclaimer or renunciation is treated as making an interest ineffective from its inception. *See Jewett v. Comm'r*, 455 U.S. 305, 323 (1982) (Blackmun, dissenting) (in a trust case, stating, "[a] disclaimer is a refusal to accept property *ab initio*"); *see also* RESTATEMENT (FIRST) OF PROPERTY § 231 cmt. d (1936) (in the estates context, describing how, "Normally renunciation is not manifested until a date subsequent to the time when the creating instrument becomes operative. When, however, such renunciation is manifested, the resulting ineffectiveness operates . . . as an ineffectiveness in the inception.") However, this legal fiction does not alter whether the United States in

fact retained a reversionary interest in the railway lines at issue in this suit.

Even if, as a general matter, the mere filing of a disclaimer of interest cannot alter the underlying history of conveyances and property interests surrounding a given piece of land, the Landowners argue that this Court should defer to the specific legal assertions made by the United States in the Disclaimer filed in this suit. Here, the Disclaimer filed by the United States Attorney's Office on behalf of the United States did not merely disclaim the United States's interest in the property, but also included the legal predicate for doing so—namely, that the United States had not retained any reversionary interest or right of reentry to the land ultimately deeded to the Landowners. The Landowners argue that the district court, upon confirming the Disclaimer, should have accepted these assertions at face value, and thus found that because the United States lacked any reversionary interest in the railway lines, § 912 was inapplicable to the property at issue and accordingly the County lacked any interest in the right-of-way. This, however, is not the case. The Department of Justice's mission "[t]o enforce the law and defend the interests of the United States," United States Department of Justice, Mission Statement, http://www.usdoj.gov/02organizations/ (last visited on March 10, 2008), and the United States Attorney's duty to represent the United States in all civil matters, 28 U.S.C. § 547, does not bestow that office with the power to authoritatively determine mixed questions of law and fact, such as whether the United States originally maintained a reversionary interest over the railway lines at issue in this suit. Thus, the district court's confirmation of the Disclaimer only confirmed the United States's renunciation of its interest in the property as of the date of the Disclaimer's

filing—whether the United States ever in fact held a reversionary interest in the railway lines is a matter left to the courts, assuming jurisdiction over the suit still exists.[6] *See Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."); *Alaska v. United States*, 662 F. Supp. 455, 457-58 (D. Alaska 1987), *affirmed by Alaska v. Ahtna, Inc.*, 891 F.2d 1401 (9th Cir. 1989) (district court's confirmation of United States's disclaimer of interest did not strip the court of jurisdiction to review the Secretary of Interior's determination of a waterway's navigability, the sole issue in determining whether property interest originally lay with the United States or with Alaska).

Assuming, then, that the United States did in fact retain a reversionary interest in the railway lines at issue in this suit, the remaining question is what legal effect, if any, the Disclaimer now has on the County's property interest. Here too, separation of powers concerns exist, which in this case prevent the Disclaimer from effectively repealing § 912 and § 1248(c)'s applicability to this land. As has already been discussed, § 912, § 913, and § 1248(c) were passed by Congress pursuant to the United States's reversionary interest in the railway's right-of-way. This interest can best be characterized as a "possibility of reverter," which only vests upon abandonment of the railway line, at which point the interest is still subject to divestment if a public highway is established within one year's time. *See Vieux v. E. Bay Reg'l Park Dist.*, 906 F.2d 1330, 1337 (9th

---

[6] We note that this is not to say that the United States could not express, as a litigant in this lawsuit, the position it has adopted in the Disclaimer. We only find that the Disclaimer does not bind this Court to adopt those legal conclusions.

Cir. 1990). Tracking the district court's reasoning, the Landowners assert that similarly, the County's interest in the property cannot vest unless three contingencies occur: 1) the United States retains its reversionary interest; 2) the railway line is abandoned; and 3) a public highway is established. Accordingly, assuming abandonment has not yet occurred, the Landowners claim that the United States was free to alter, amend, or release the non-vested property interests it held, as well as those of the County.

The Landowners are partially correct in their argument. As the cases cited by the Landowners to support their position reflect, when a legislature disposes of a possibility of reverter in a statute, until that interest vests into an enforceable right, the legislature is free to repeal that reversionary interest or amend the contingencies upon which the interest will vest. *Independent School Dist. v. Smith*, 181 N.W. 1, 2 (Iowa 1921);[7] *Commonwealth Transp. Comm'r v. Windsor Indus.*, 630 S.E.2d 514, 521 (Va. 2006) ("Thus, we are of opinion that until the possibility of having an estate in the property vested into an enforceable right, the contingencies upon which it depended and the

---

[7] The relevant language in *Independent School Dist. v. Smith* states:

> As to the parties who might ultimately become entitled to a reversion under the provisions of the statute then existing, no right then vested. The legislature could thereafter have repealed the provision for reversion, without violating the rights of anyone. It could have again enacted different provisions pertaining to reversion, without violating the rights of anyone. In other words, no one then had a vested right in the future operation of the statute.

procedures for exercising the right accrued remained subject to modification by future amendment."). Thus, as reflected by Congress's 1988 amendment to § 912 with § 1248(c), Congress was free to modify the disposal of the United States's reversionary interest for railway lines that had not yet been abandoned according to the terms set forth in § 912. The Landowners fail to recognize, however, that there is a distinction between Congress modifying the disposal of the United States's reversionary interest and the United States Attorney's Office trying to do the same. While it is uncontested by the County that the United States Attorney's Office has been granted the authority to disclaim the United States's own interest in the property at issue, that does not give the United States Attorney's Office the authority to also effectively disclaim the County's statutorily created interest. *See Royal Indemnity Co. v. United States*, 313 U.S. 289, 294 (1941) ("Subordinate officers of the United States are without [the] power [to release or otherwise dispose of the rights and property of the United States], save only as it has been conferred upon them by Act of Congress or is to be implied from other powers so granted.") If the United States Attorney's Office, by filing a Disclaimer of Interest, is "free to foreclose Bayfield County's future contingent rights" in the right-of-way as the district court maintained, this effectively amounts to the executive branch's usurpation of Congress's decision to bestow the County with a future, contingent property interest in the right-of-way, creating separation of powers concerns.

The Landowners further argue, however, that common law principles must be applied to the property interests in § 912 and § 1248(c), in which case the Landowners claim that by the very terms of § 912 and § 1248(c), the Disclaimer serves to extinguish the County's property

interest. According to the Landowners, the Disclaimer should be treated the same as a "release" of the United States's possibility of reverter, which, as the Landowners maintain, at common law served to convert what was previously a determinable or qualified fee into a fee simple absolute. 28 AM. JUR. 2D *ESTATES* § 210 (2007); HERBERT T. TIFFANY & BASIL JONES, 2 TIFFANY REAL PROP. § 314 (1939). While this Court acknowledges that at common law, a "release" of a possibility of reverter generally has this effect, *see* RESTATEMENT (FIRST) OF PROPERTY § 58 (1936), it is still not altogether clear whether the County's interest would invariably be extinguished under common law principles. First, the authorities cited by the Landowners do not clearly state whether such a release invariably destroys the executory limitation that would attach to the United States's estate upon reversion of the right-of-way. *See* RESTATEMENT (FIRST) OF PROPERTY § 46 cmt. n (1936) (discussing springing executory limitations, and noting that when a deed "contains a limitation in favor of persons not ascertainable until after the end of such prior interests, the conveyor, or his successor in interest retains a reversionary interest which, at the end of the other created interests, becomes a present estate in fee simple subject to an executory limitation of the springing type."). Furthermore, it is not a given that a "release" is the proper analogy to this Disclaimer under common law principles, or whether a "renunciation" is the better analog. *See* RESTATEMENT (FIRST) OF PROPERTY §§ 231, 233 (1936) (discussing "renunciation" and its impact on succeeding interests). Fortunately, contrary to the Landowners' position, this Court is not required to decipher how the County's property interest and the Disclaimer fit within common law property classifications. As the

Supreme Court stated in an early case involving a congressional land grant to a railroad:

> It is always to be borne in mind, in construing a congressional grant, that the act by which it is made is a law as well as a conveyance, and that such effect must be given to it as will carry out the intent of Congress. That intent should not be defeated by applying to the grant the rules of the common law, which are properly applicable only to transfers between private parties.

*Missouri, Kan. and Tex. Ry. v. Kansas Pac. Ry.*, 97 U.S. 491, 497 (1878); *Leo Sheep Co. v. United States*, 570 F.2d 881, 885 (10th Cir. 1977) ("In order to determine whether there was an implied reservation of an easement of access, we look solely to the intent of Congress, as such will not be defeated by application of the rules of common law.") (citing *Missouri, Kan. and Tex. Ry.*, 97 U.S. at 491). This rule, specifically articulated by the Supreme Court with respect to statutorily granted property interests in the railroads, takes precedent over general language by the Supreme Court cited by the Landowners that Congress intends for common law definitions to be applied to terms not otherwise defined in a given statute. *See Neder v. United States*, 527 U.S. 1, 23 (1999) ("Congress intends to incorporate the well-settled meaning of the common-law terms it uses . . . 'unless the statute otherwise dictates.' ") (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992)); *see also Evans v. United States*, 504 U.S. 255, 259-60 (1992). Indeed, courts have specifically stated, in reference to § 912, that "[t]he precise nature of [the United States's] retained interest need not be shoe-horned into any specific category cognizable under the rules of real property law." *Marshall v. Chicago & Northwestern Transp. Co.*, 31

F.3d 1028, 1032 (10th Cir. 1994) (quoting *Idaho v. Oregon Short Line R.R. Co.*, 617 F. Supp. 207, 212 (D. Idaho 1985)). Accordingly, the Landowners' claim as to what effect the Disclaimer has on the County's property interest under common law principles is immaterial. Congress, in passing § 912 and § 1248(c), provided that local governments could take claim to properly abandoned railway lines by establishing a public highway within a one-year time period. Congress has the means to further amend, modify, or repeal this property interest, but under the current terms of the statute, Congress's intent would be frustrated by permitting the Disclaimer to extinguish local governments' interest in establishing a public highway on these lands.

Accordingly, for the reasons discussed, we hold that the United States's Disclaimer did not serve to extinguish any interest the County holds in the railway line, assuming the United States originally retained a reversionary interest in the right-of-way and formal abandonment, according to the terms in § 912, has not yet occurred.[8] In reaching

---

[8] We observe that this holding is entirely consistent with other cases to have addressed the effect of a disclaimer of interest under 28 U.S.C. § 2409a(e). The most closely analogous case is *Leisnoi, Inc. v. United States*, 313 F.3d 1181 (9th Cir. 2002), in which Leisnoi, an Alaska Native village corporation, sought to quiet title against the United States with respect to land it had obtained from the United States under the Alaska Native Claims Settlement Act. *Id.* at 1182-83. A third-party, Stratman, who had conducted ranching operations on the land when it was federally owned, moved to intervene, claiming that the lands should be returned to the federal government because Lesnoi did not qualify as a Native Village under the Act. *Id.* The United States issued a disclaimer of title, which the district

(continued...)

this decision, we are mindful of the important policy considerations raised by the parties and the *amicus curiae,* particularly with respect to the County and Congress's interest in preserving abandoned railway lines for conversion into trails, as opposed to the Landowners' interest in not being stripped of land they have deemed their own for over twenty years. These policy concerns, however, are more appropriately addressed with respect to the issue of when the railway lines were abandoned according to the terms of § 912, assuming that the United States did in fact retain a reversionary interest in the property. Given that the district court based its grant of summary judgment and order quieting title in the Landowners' favor based solely upon what we have found to be an erroneous finding regarding the Disclaimer's effect on the County's alleged interest in the right-of-way, we remand for consideration of whether the United States did in fact retain a reversionary interest in the land at issue and, if so, whether the railroad's right-of-way has been abandoned according to the terms of § 912 and § 1248(c).

---

[8] (...continued)
court confirmed, then dismissing Stratman's motion to intervene as moot. *Id.* at 1184. The Ninth Circuit affirmed the dismissal of the motion to intervene. *Id.* at 1184-85. Contrary to the Landowners' claim that Stratman and the County are similarly situated in both cases, a clear distinction exists. Stratman had no interest in the disputed property—his sole claim was that title should remain with the United States. *Id.* at 1185. In contrast, the County has a statutorily created interest in establishing a public highway on the railway lines within one year of abandonment according to the terms in § 912. This distinction allows for the difference in outcome between the dismissal in *Leisnoi* and the continued vitality of the County's claim at this stage of the proceedings.

### III.  Conclusion

For the foregoing reasons, we VACATE the district court's grant of summary judgment and declaratory judgment quieting title in the Landowners' favor, and REMAND for further proceedings consistent with this opinion.